FAIRCHILD and others *against* HOLLY and others.

| 10 | 175 |
| 62 | 426 |

If money be paid on an account, and there be no application of it, at the time of payment, by either party, the law will apply it to those items in the account which first accrued.

In an action of book debt brought·by *A* against *B, C*, and *D*, partners, *A* exhibited his account, consisting of sundry charges for goods sold and delivered at different times, from *June*, 1830, to *August*, 1832, amounting to 813 dollars, with credits of cash at sundry times, during the same period, to the amount of 529 dollars ; the account being an entire one, without any rest being made or balance struck.   After a part of the goods charged had been furnished, *C*, who was a secret partner, withdrew from the concern ; after which, *B*, who made all the purchases, paid to *A* the moneys credited

Fairchild
*v.*
Holly.

in the account.  These moneys, if applied to the charges which accrued before *C* withdrew, would extinguish that part of the account; leaving a balance in favour of *A*, on the other part only.  There having been no application of the moneys so paid, at the time of payment, by either party, it was held, 1. that the rule that money paid is to be applied to the benefit of the fund from which it was taken, was inapplicable to this case, the plaintiffs' account being entire, and the funds of the defendants undivided; 2. that the rule that money paid is to be applied to that debt for which there is the least security, was inapplicable, because it did not appear but that the company were abundantly solvent after *C* withdrew, or that the absence of his name lessened the security; but, 3. that tne rule that money paid on an account is to be applied to the oldest items, was applicable to the case; and the moneys credited in the plaintiffs' account were so applied.

THIS was an action of book debt against *William H. Holly, Simeon H. Minor, John Brown, Jonathan B. Waterbury, William S. Wood, William Hoyt,* jr., *Roswell Hoyt,* and *Lounsbury Palmer,* demanding 350 dollars.  *William H. Holly* and *William S. Wood* suffered judgment by default.  The other defendants appeared and pleaded *owe nothing.*

On this issue the cause was tried, at *Fairfield, December* term, 1833, before *Williams,* J.

The plaintiffs' book consisted of various charges for paper, made at different times, from the 15th of *June,* 1830, to the 31st day of *August,* 1832, amounting to 813 dollars.  In the same account were several items of credit, at different times, from the 12th of *November,* 1830, to the 13th of *April,* 1832, amounting to 529 dollars, 12 cents.  Both sides were embraced in an entire account, without any rest being made or balance struck.

The plaintiffs claimed to have proved, that the defendants were partners.  The defendants denied that they were ever partners; but if they were, they claimed to have proved, that *Brown* had sold out all his interest, and withdrawn from the firm, before a large proportion of the goods charged in the plaintiffs' account, were furnished.  They also claimed, that *Brown,* if a partner, was a dormant partner, and not known as such to the plaintiffs before he ceased to be a partner; and that all which was due to the plaintiffs on their book, for goods sold and delivered, before *Brown* ceased to be a partner, had been paid for before the commencement of this action.  They insisted, that all payments made to the plaintiffs, were made

by *Holly ;* and that the amount of credit given by the plain-
tiffs on their book, if applied to the oldest charges, would cancel
all the demand which the plaintiffs had before *Brown* ceased
to be a partner ; and that if no application was made by the
parties, of payments subsequent to the withdrawal of *Brown*,
to the debt afterwards contracted, such payments would by law
enure to the satisfaction of the oldest charges, and thereby extin-
guish *Brown's* indebtedness.    The plaintiffs insisted, that the
sums paid after the withdrawal of *Brown*, must be presumed
to be on account of the then existing company, and ought to
be applied to the charges which accrued afterwards, and would
not enure to cancel the debt due while *Brown* was a partner.
On this point, the judge charged the jury, that the money paid
by *Holly* after *Brown* ceased to be a partner, could not, in the
absence of any evidence on the subject, be applied to the debt
of the former company ; but the application ought to be made
to the debt of the company then existing, out of whose funds
it might be presumed to have accrued.

The plaintiffs obtained a verdict for 283 dollars, 28 cents,
debt, and costs ; and the defendants thereupon moved for a
new trial, for a misdirection.

*Sherman* and *Betts,* in support of the motion, remarked,
That it must be taken as found, in this case, that *Brown* had
withdrawn from the firm before the payments were made ; and
that there had been no actual application of the payments, by
the parties ; for the charge proceeds on the assumption of these
facts.

They then contended, 1. That the general rule of law is,
that payment is to be applied to the oldest debt ; and that that
rule was applicable to this case.   *The United States* v. *Kirk-
patrick* & al., 9 *Wheat.* 720, 737.   *Clayton's* case, 1 *Meriv.*
584, 607, 609.   *Newmarch* & al. v. *Clay* & al., 14 *East,*
239.   *Meggot* v. *Mills,* 1 *Ld. Raym.* 286.   *Dawe* & al. v.
*Holdsworth* & al. *Peake's Ca.* 64.    And here we need not
inquire, whether it is the presumed intention of the creditor or
of the debtor that is to govern ; for the result will be the same
in either case.

2. That from the circumstances of the case it might be pre-
sumed, and it should have been left to the jury to find, that it
was the intention of the parties to apply the payments to the

*Fairfield,*
June, 1834.

Fairchild
*v.*
Holly.

oldest charges.   The order in which the debts were contracted, is, in regard to payment, the order of nature.

3. That there was nothing in the situation of *Holly*, the individual who made the payments, or of the company at that time, going to rebut this presumption.   *Holly* himself and all his partners were members of the old firm, as well as of the new, and were liable for the whole account.

*Hawley*, contra, contended,  I.  That the law, in the absence of any agreement or appropriation by the parties, will apply a payment to the peculiar debt of the payor, and not to a debt he owes jointly with another person.   Here the plaintiffs had two claims ; one against the company that paid the money, and another against a distinct company, not composed of the same members, that had ceased to exist before the payments were made.   The law will not apply to the payment of *Brown's* debt moneys in which he had no interest ; least of all will it make such application, leaving unpaid debts of those who paid the moneys and whose moneys were paid.   *Goddard* v. *Cox*, 1 *Stra.* 1194.   *Thompson* & al. v. *Brown* & al. 1 *Moody &* *Malkin*, 40. (2 *Serg. & Lowb.* 242.) *Simson* & al. v. *Ingham* & al. 2 *Barn. & Cres.* 25. (9 *Serg. & Lowb.* 25.)   Moneys paid, in the absence of evidence to the contrary, are presumed to be the funds of the payor.

2. That the law will apply a payment to the debt for which the creditor has the least security, leaving that for which he has the best security, unpaid.   *Peters* v. *Anderson*, 5 *Taun.* 596. S. C. 1 *Marsh.* 238.   *Field* & al. v. *Holland* & al. 6 *Cranch* 8, 28. *Brewer* v. *Knapp* & al. 1 *Pick.* 332.   For one portion of their account the plaintiffs have the security of the new firm alone ; for the other portion, the same security, with the addition of *Brown's*.

In reply to the last point, it was said there was no foundation for it in the case.   It did not appear that either firm was insolvent ; nor that *Brown's* name would increase the security. In relation to another point, it was said that the new firm had the funds of the old, and it did not appear that the moneys paid were not a part of those funds.   *Holly*, who made the payment, was a member and the agent of both firms.

*Bissell*, J. Upon the facts presented in this motion, it is to be taken for granted, that a large portion of the articles charged in the plaintiffs' account, were furnished, and a large portion of the payments were made, after *John Brown*, one of the defendants, withdrew from the firm, and ceased to be a partner. It is also conceded, that if the payments which were made after he so withdrew from the concern, are applied to the oldest account, the debt for which he was liable, is paid ; and the verdict should have been for the defendants. On the trial below, the question arose, how the law would apply these payments, neither party having directed their application. And upon this point, the jury were charged, " That the money paid by *Holly*, after *Brown* ceased to be a partner, could not, in the absence of any evidence on the subject, be, by the plaintiffs, applied to the debts of the former company ; but the application ought to be made to the debt of the company then existing, out of whose funds it might be presumed to have accrued."

The question for our decision arises upon the charge. Is that correct ?

It is a well-settled principle, that the person paying money has a right to apply the payment as he thinks proper. If he owe several debts, he may apply the payment to either. But if he does not direct the application, it may be made by the party receiving the money. If it be not applied by either party, the law will make the application ; and in doing so, will apply the payment to the extinguishment of the oldest debt. Such is the general rule. *Meggot* v. *Mills* & al. 1 *Ld. Raym.* 286. *Simson* v. *Ingham,* 2 *Barn. & Cres.* 65. *Clayton's* case, 1 *Meriv.* 584, 610. *Brooke* v. *Enderby* & al. 2 *Brod. & Bing.* 70. *The United States* v. *Kirkpatrick,* 9 *Wheat.* 720, 737.

Such, then, being the general principle, it will be readily admitted, and it was indeed admitted in the argument, that had *Brown* continued a member of the co-partnership, the payments made must have been applied to those items in the plaintiffs' account, which first accrued. Is the effect of *Brown's* withdrawment such, as that the law will make a different application of these payments ?

And here it should be remarked, that the plaintiffs' account is entire and unbroken. No rest was made, and no balance struck, when *Brown* withdrew from the co-partnership.

HARVARD LAW LIBRARY

*Fairfield,*
June, 1834.

Fairchild
*v.*
Holly.

The charges continued to be made in the same manner, and against the same persons. Indeed, it was claimed to have been proved on the trial, and for the purposes of the argument, it may be assumed, that *Brown* was a secret partner, and was not known by the plaintiffs to have been a partner, until about the time of the commencement of the suit. He silently withdrew; and the other defendants continued to carry on the business, in the same manner as before. And it should be borne in mind, that *Wm. H. Holly* was, throughout, the acting partner, and the agent of the other partners. It was through him that the goods were furnished, and the payments made, both before and after *Brown* withdrew from the concern.

Upon this state of facts, there would seem to be no reason, independently of authorities, why the general rule should not prevail, and the payments be applied to the oldest demand.

The ground assumed in the charge, *viz.* that the moneys, with which the payments were made, are presumed to have accrued out of the funds of the new firm, does not appear to me to be tenable. No new partner had come in: no new funds were thus created. The business underwent no visible change; and the members of the new co-partnership, or rather the remaining members of the old firm, are presumed to have been in possession of the funds of that firm, so far at least, as those funds were required for the payment of its debts. And *Holly* still continuing to be the agent, may be presumed to have had the controul of those funds, for that purpose. Indeed, the presumption would seem to be, that these funds belonged to the old rather than to the new firm; as by reason of *Brown's* retiring, it would seem to be necessary that the debts due to that firm should be called in, in order to the payment of its own debts, and the final settlement of its concerns.

This view of the case furnishes a decisive answer to an argument, which has been urged at the bar, *viz.* that in the absence of testimony, the moneys paid are to be presumed to be the moneys of the person making the payment.

It has, however, been urged upon us, as a settled principle, that the law will apply a general payment to the debt, for which the creditor has the worse security, leaving that for which he has the better security unpaid.

Admitting the correctness of the principle; it may be remarked, that there is nothing in the case before us, which

*Fairfield,*
June, 1834.

Fairchild
*v.*
Holly.

either demands, or warrants its application. There was no evidence offered at the trial, which went to prove, that the plaintiffs' security was in the least impaired, by reason of *Brown's* withdrawing from the copartnership. There was no pretence, that the remaining partners were not abundantly responsible. Some foundation should have been laid, for the application of the principle, at least by evidence tending to show, that the security of the creditors was lessened, by the fact in question. Both debts are of the same character ; they are both evidenced in the same manner ; they both stand on the same ground, as to the proof of their existence ; and both, for aught that appears, are against persons of abundant responsibility. The rule, therefore, does not apply ; and the cases cited do not sustain the objection.

In the case of *Peters* v. *Anderson*, 5 *Taun.* 596. the plaintiff had served the defendant three years, as a surgeon, *under an indenture ;* and during that period, payments had been made, leaving, however, a balance due. After the three years had expired, the plaintiff agreed, (but not under seal,) to serve the defendant as a surgeon, at a stipulated salary. And under this agreement he served three years, during which general payments were made, leaving on this contract a balance due, but sufficient to extinguish the debt under the indenture.

The plaintiff brought covenant on the indenture, and *assumpsit* for his salary due under the simple contract : and the question was, whether the payments made during the latter period should be applied to the extinguishment of the first debt ; and it was holden, that these payments might be applied to the debt due by simple contract. The case merely decides, that the plaintiff was at liberty to apply the money he received to which account he pleased ; and might, therefore, appropriate it to the latter account, for which he had the worse security, and might leave the first account open.

The case of *Thompson* v. *Brown*, 1 *Moody & Malkin* 40. only proves, that a creditor cannot apply partnership funds to the payment of the individual debt of one of the partners ; at the same time leaving a debt due him from the copartnership unpaid. Lord Ch. J. *Abbott* left the question, whether the money paid belonged to the partners or not, to the jury ; at the same time, he fully recognizes the general rule, that when

money is paid generally, without any appropriation, it ought to be applied to the first items in the account.

The case of *Simson* v. *Ingham,* 2 *Barn. & Cres.* 65. and which has been relied upon, does not support the charge of the judge on the circuit. That case does, indeed, decide, that a creditor having two demands, may apply a general payment to the later account, if he pleases. The only question upon which the case turned, was, whether the plaintiffs had not precluded themselves from thus applying the payments, by the course they had taken. It was holden they had not: and *Bayley,* J., in giving his opinion in that case, says : " The general rule is, that the party who pays money, has a right to apply that payment as he thinks fit. If there are several debts due from him, he has a right to say to which of those debts the payment shall be applied. If he does not make a specific application, at the time of payment, then the right of application generally devolves on the party who receives the money. But there is a third rule, *viz.* that where one of several partners dies, and the partnership is in debt, and the surviving partners continue their dealings with a particular creditor, and the latter joins the transactions of the old and the new firm in one entire account, then the payments made, from time to time, by the surviving partners, must be applied to the old debts."

This is the doctrine in *Clayton's* case, 1 *Meriv.* 584. and Sir *William Grant* there says, that by the civil law, the application is given, first to the debtor, and then to the creditor ; and that as well the creditor as the debtor must make his election, at the time of payment ; and that unless such election be immediately made, the law will appropriate it in discharge of the most burthensome, and if all are equally burthensome, of the oldest debts.

In the case of *Brooke* v. *Enderby* & al. 2 *Brod. & Bing.* 70. the rule is applied where a dormant partner had withdrawn from the firm, and the transactions with the creditor were continued, by the remaining partner. That case cannot, indeed, be distinguished from the present ; and if it be law, must be decisive.

There, *Enderby* was a secret partner, and withdrew from the firm. No notice was given of the dissolution ; and the plaintiff did not know that he was a partner, until after the bankruptcy of *Gilpin,* the other partner. During the copart-

*Fairfield,*
June, 1834.

Fairchild
*v.*
Holly.

nership, various sums were received from the plaintiff, and payments were made from time to time. There was, however, a large balance in his favour, at the time of the dissolution. After the dissolution, *Gilpin* dealt with the plaintiff, in the same manner as before, receiving moneys and making payments ; and so continued to deal with him down to the period of his bankruptcy. The account was kept in the same manner ; no distinction being made as to the time before and after *Enderby* withdrew. No rest was made in the account, and no balance struck ; and there was, at all times, a considerable balance due to the plaintiff.

In this action, *Gilpin* pleaded his certificate. *Enderby* pleaded the general issue, and paid money into court. And he claimed a credit for all the sums paid by *Gilpin* to the plaintiff, after the dissolution, without giving credit for any sums received by *Gilpin*, on account of the plaintiff, after that period, on the ground that the account being entire, and the payments made after the expiration of the partnership, not having been, at the time, appropriated to any particular debt, must be applied to the reduction of the old balance due from the copartnership. The court of *Common Pleas* were of opinion, that the case was not distinguishable in principle from *Clayton's* case ; and directed, that a judgment of non-suit should be entered.

On the ground of authority, therefore, as well as of principle, I am of opinion, that the charge to the jury was incorrect ; and that the rule must be made absolute.

DAGGETT, Ch. J. and CHURCH, J., were of the same opinion.

WILLIAMS, J. The plaintiffs brought an action of book debt against the defendants, claiming they were partners, and had been by them supplied with paper to carry on their business. The partnership was denied. If any, it was a dormant partnership. One of the defendants, *Brown*, it was claimed, at all events, ceased to be a partner before much of the paper was furnished ; and that by the plaintiffs' account, allowing all the credits to be placed to all the defendants, without regard to the charges made by the plaintiffs since it was claimed *Brown* left the concern, there would be nothing due from the company

Fairchild
*v.*
Holly.

while *Brown* was a member; and so no judgment could be rendered against any of the defendants. The plaintiffs claim, that paper to a large amount had been delivered to *Holly & Co.* since *Brown* left; and that the credits given since, ought to apply to the debt contracted since.

It was not claimed, that the defendants appropriated the money, when paid; nor that the plaintiffs had done it, unless the manner of keeping the account constituted an appropriation; but the defendants claimed, that the payment should apply to the oldest accounts.

The court below thought, that as after *Brown* left the concern, *Holly & Co.* could not subject him, by their purchases; so, in the absence of all evidence, it was fair to presume, that the payments made them, were made for the benefit of that concern for whom the purchases were made; and I am not satisfied that this opinion is incorrect.

Certain rules as to the application of payments, are well settled. The first rule is, that the debtor, when he pays, may direct the application; and if he omits, that the creditor may make it. By the civil law, the creditor must do it *immediately*; by our law, he may take a *reasonable time*. *Simson* v. *Ingham,* 2 *Barn. & Cres.* 65. (9 *Serg. & Lowb.* 302.) *Mayor,* &c. of *Alexandria* v. *Patten,* 4 *Cranch,* 317. 320. But he cannot be allowed to do it, after a controversy begun. In that case, both parties having omitted it, the court will make the application according to its own notions of justice. *The United States* v. *Kirkpatrick* & al. 9 *Wheat.* 720. 737.

Another principle that the courts have adopted, is, that the money may be appropriated to the proper debt of the party who pays. Thus, where the payer owed a debt to the plaintiff, and another debt was due from his wife, and another from his wife as executrix, it was held, that the plaintiff could not apply the payments to the latter debt, but might to either of the two former, he being equally a debtor for them. *Goddard* v. *Cox,* 2 *Stra.* 1194.

Another principle seems to be, that it may be applied to a debt where the security is the most inferior or precarious. *Peters* v. *Anderson,* 5 *Taun.* 596.

The more general rule, doubtless, is, that it be applied to the oldest debt, in the absence of any peculiar circumstances, even

though it be merely an *equitable* debt.    *Bosanquet* & al. v. *Wray* & al. 6 *Taun.* 597.

It cannot, I think, be seriously contended, in this case, that the plaintiffs have intentionally made an appropriation, when they had no knowledge of any change in the firm.   The court, then, is to make it, according to its sense of justice.

Before *Brown* left the concern, the firm was *Holly & Co.*; and so it remained afterwards; but still it consisted of different persons, and was as distinct a concern as if a new name had been introduced.   The new debts were not the debts of *Brown*, but of the new company of *Holly & Co.*   Why, then, should the payments of this company be taken as the payments of the concern of which *Brown* was a member?   Suppose a new name had been assumed; would a payment by that company, have been considered as a payment for the old company?   Now the payments are made by *Holly & Co.*; but it is not the *Holly & Co.* of which *Brown* formed a part.   It seems, therefore, not to fall within the principle, that appropriations must be made to the oldest debt; because these were not the debts of the same person.   The *Holly & Co.* who make the payments, are not the *Holly & Co.* who contracted the debts. Of course, it is not the payment of the former company, and ought not to be applied to their debt.

It was intimated, that it was common that the affairs of the former company be settled by their successors; but it is not to be presumed.   The evidence was in the power of the defendants; and they ought to have shown it.   In the absence of any such testimony, the fair presumption seems to me to be, that this firm were paying the debt of this firm, rather than the debt of another firm of the same name, although they may have been legally liable for both.   Had a new partner come in, instead of an old partner going out, the injustice would have been more manifest; but it seems to me the principle would be the same.   In neither case, is the company the same. The defendants, then, cannot claim the benefit of the principle, that application shall be made to the oldest debt.   On the contrary, is it not more just, that the plaintiffs shall apply these payments to the debt which is most precarious?

Here it is said, they must show, that one is precarious.   It is apparent, that they have less security, in the one case, than in the other; and in *Peters* v. *Anderson,* 5 *Taunt.* 596. the

bare fact that one was secured by deed, and one was a simple contract debt, was deemed sufficient to entitle a creditor to an election. Now, when the defendants seek to shelter themselves from this claim, by the application of this principle, and withdraw one of the defendants from this suit, and thus avoid it as to all, according to my notion of justice, this defendant ought to show, as a matter of fact, that such payment was intended for the debt in which he was interested, or was so received.

Suppose the plaintiffs had the note of *Holly* and *Brown* for the first paper, and that of *Holly* for the last, and *Holly* makes a payment; no doubt the *plaintiffs* could apply that payment to the last debt; and why should not the court do that justice to them, which they permit the plaintiffs to do themselves? If they would, then the only question here would arise from the manner of keeping this account, or its being a partnership debt. As to the manner of keeping the account, it is all explained, by the fact, that the partnership was *secret;* and the plaintiffs ought no more to be prejudiced by that, than they would be, by making their charges to *William H. Holly,* in a claim against *Holly* and *Brown,* when they discovered he was a secret partner.

But it is said, that one rule regarding this subject, is, that where a firm is in debt, and one of the partners dies, and the survivors continue the business with a particular creditor, and the latter joins the transactions of the old and new firms in one entire account, the payments made by the surviving partners, from time to time, must be applied to the old debt. Such was *Clayton's* case, 1 *Meriv.* 608. to the principles of which I entirely subscribe. Here, the partners were bankers, and were largely indebted to *Clayton,* at the time of the death of one of them, and continued the business under the same name. *Clayton* drew, from time to time, upon that house, so as to reduce his debt from 1713*l.* to 453*l.* Then he desired more funds, and again drew on the house. The account was, by the bankers, kept in the same manner as before, and sent to him, from time to time, as common; and it was held, by the Master of the Rolls, that the parties had treated this, and the court would treat it, in the same manner as if one of the partners had not died. The judge, however, remarks, " that he should feel a good deal embarrassed, if the general

question of the creditor's right to make the application of indefinite payments, were now necessary to be determined." 1 *Meriv.* 607. He therefore, it seems to me, means to place the case on its own peculiar circumstances, *viz.* the case of a banking house, which is frequently continued from generation to generation, under the same firm, changing however its members, from time to time, but keeping its accounts in the same manner as our incorporated institutions do, without any alteration in consequence of the death of its members; and that this unbroken account was not objected to, by the creditor. There is, however, a more recent case of *Brooks* v. *Enderby* & al. 2 *Brod.* & *Bing.* 70. (6 *Serg.* & *Lowb.* 23.) where the court of *Common Pleas* carried the principles of that case further. There, *Gilpin,* the plaintiff's banker, had a secret partner, *Enderby,* and at the time of dissolution, owed the plaintiff a large sum; after which payments were made, and new sums received; and that court held, that the case could not be distinguished from *Clayton's* case, and that *Enderby* had a right to the benefit of the payments made by *Gilpin* since the expiration of the partnership, without being charged with the moneys by him received. That case, so far as I can see, differs in nothing from this, except that it is the case of a banker's account, which seems to be noticed in their opinions, as well as in a note to 13 *Petersd.* 247. This, however, is merely an opinion, without any reason given for it, except the general one, that it is not distinguishable from *Clayton's* case.

Any opinion from a source so respectable is certainly entitled to great attention; and supported as it is, by the opinion of my brethren, it is with great reluctance that I venture to differ from them, and am much relieved to find, that the view which I have taken of *Clayton's* case, is strongly supported, by the opinions of two eminent judges of the court of *King's Bench,* in *Simson* & al. v. *Ingham* & al. 2 *Barn.* & *Cres.* 65. (9 *Serg.* & *Lowb.* 25.) decided in 1823, several years since the above case in the *Common Pleas.* *Bailey,* J., in alluding to the rule says: "In this case, it is to be presumed, that all the parties have *consented* that it should be considered as one entire account, and that the death of one of the partners has produced no alteration whatever." Consent must imply knowledge of the facts; and therefore, could not exist in the case of *Brooks* v. *Enderby,* unless, indeed, it is to be presumed from

*Fairfield,*
*June, 1834.*

Fairchild
*v.*
Holly.

the general course and usage of bankers' business; in either of which cases, it cannot apply to this case. And *Best*, J., in remarking upon *Clayton's* case, says: "It was on the ground that the accounts were so blended, that the Master of the Rolls decided that case." Where the blending of accounts arises from a fact by the defendants concealed from the plaintiffs, that can certainly have no weight. I think, therefore, that these opinions by these eminent judges, given several years after the decision in the *Common Pleas*, will show, that the decision is not acquiesced in, or that it applies exclusively to bankers' accounts.

I cannot, therefore, concur in advising a new trial.

PETERS, J. gave no opinion, being absent.

New trial to be granted.