# APPELLATE. COURT.

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1891, IN THE SEVENTY-FIFTH
· YEAR OF THE STATE.

---

No. 245.

### CONDUITT ET AL. v. RYAN.

GUARANTY.—*Construction of.*—*Continuing Guaranty.*—*Right of Revocation.*—
*Notice.*—A guaranty in the words "I hereby guarantee the payment,
when due, of all bills of goods sold, or that may be sold, on and after
this date, by C. & Sons to B." is an original, or absolute guaranty, and
is also a continuing guaranty. It may be revoked by the guarantor
upon notice; not so as to prejudice the other party in so far as he has
already acted upon it, but as to other or additional liability thereafter.
The notice of revocation, unless the contract of guaranty so provides,
need not be in writing.

PAYMENTS.—*Appropriation of by Debtor or Creditor.*—*Appropriation by Law.*—
*Separate Accounts.*—*Intention of Debtor.*—A debtor who owes his creditor
money on distinct and separate accounts, or debts, may direct his pay-
ments to be applied to either, as he pleases. If he omits to make any
such appropriation, then the creditor has the right to apply the pay-
ments to such debts due to him by the debtor as he may choose. If the
debtor pay with one intention, and the creditor receive with another,
the intent of the debtor must govern. Neither party can claim the
right, however, to make an appropriation after a controversy has arisen.
If neither party make a specific appropriation, the law will apply it
"according to its own notion of the intrinsic equity and justice of the
case," but seeking always to ascertain the intention of the debtor, which
intention, if it can be ascertained, must prevail.

Conduitt *et al. v.* Ryan.

SAME.—*General Account.—Entry of Payments.—Inference of Law.*—When both parties concur in the entry of the payments upon a general account, without specific appropriation, the law infers an intention on the part of both that they shall satisfy the charges therein in the order of their entry, and they will be so applied unless some controlling equity requires a different disposition. An appropriation may be implied from circumstances.

SAME.—*Running Account.—Absence of Appropriation by Parties.—Appropriation by Law.—Guaranty.*—Where there is no appropriation, either express or implied, the law will, in running accounts, make the appropriation according to the order of time in the items in the account, the first item on the debtor side being the first discharged by the first item on the credit side. This rule will apply although part of the account is governed by guaranty, or surety. The rule that payments not otherwise appropriated by the parties will, by the law, be appropriated to the most precarious security does not apply to the case of a running account.

INSTRUCTIONS TO JURY.—*How Made Part of Record.—Bill of Exceptions.*—In order that instructions may be made a part of the record, without a bill of exceptions, they must not only be excepted to, but they must also be signed and filed. The record must show affirmatively that they were filed.

SAME.—*Failure to Sign.—Motion for New Trial.*—Error can not be assigned upon the overruling of a motion for a new trial, based upon the refusal to give an instruction not signed by the party, or his attorney, asking the same.

From the Madison Circuit Court.

*M. S. Robinson, J. W. Lovett* and *S. M. Keltner,* for appellants.

*H. C. Ryan,* for appellee.

NEW, C. J.—This was an action brought by the appellants against the appellees to recover for goods and merchandise sold by the appellants to one William A. Black, upon the guaranty of the appellee, as follows:

"INDIANAPOLIS, IND., March 29th, 1888.

"I hereby guarantee the payment, when due, of all bills of goods sold, or that may be sold, on and after this date, by Conduitt & Sons, of Indianapolis, Indiana, to William A. Black, of Anderson, Madison county, Indiana.

"Witness: JOHN REGAN.          M. RYAN."

Conduitt *et al. v.* Ryan.

A bill of particulars accompanies the complaint, which shows that the account sued for was all made after the execution of the guaranty, the entire amount being $1,214.42, less credits endorsed on the account amounting to $715.77.

The answer, as first filed, contained four paragraphs, the first being the general denial, and the second a plea of payment. The third and fourth paragraphs are not essentially different, except that the third admits the sale by the appellants to Black of the goods sued for. Both are partial answers to the complaint, admitting the execution of the guaranty, but saying that the appellee ought not to be held liable for so much of said account as was made after June 8th, 1888, for the reason that on that day he notified the appellants not to further sell goods to said Black on the strength of said guaranty.

Demurrers to the third and fourth paragraphs of the answer were overruled, and exceptions saved. A reply of general denial was then filed to the answer, the appellee withdrawing the first paragraph of the answer.

Upon the issues thus joined the cause was submitted to a jury, and verdict returned for the appellee. Over the motion of the appellants for a new trial, and exception, judgment was rendered for the appellee for costs.

The errors assigned for a reversal of the judgment are the overruling of the demurrers to the third and fourth paragraphs of the answer, and the overruling of the motion for a new trial.

Counsel for the appellants contend that the third paragraph of the answer professes to meet the whole complaint, while it is a partial answer only. We are not inclined to so treat the paragraph. When taken as a whole, it should be regarded, we think, as limited to the goods sold after the 8th day of June, 1888, and, therefore, a partial answer.

It is urged against the sufficiency of both the third and fourth paragraphs of the answer that, inasmuch as the guaranty sued on is continuing in its character, notice by the ap-

pellee to the appellants not to make further sales to Black,. would not protect the appellee as to goods sold thereafter, in the absence of a stipulation in the guaranty to that effect.

It is no doubt true that one who has entered into a contract which is strictly that of a surety, can not, ordinarily, by notice, relieve himself from future liability for his principal, unless there be some special agreement of that kind in the original instrument. We speak of notice other or different from that provided for by statute.

The rule just stated, as to sureties proper, results necessarily and logically from the nature of the surety's promise, which is an original and absolute undertaking by him to pay the very debt which the principal has agreed to pay. He is legally bound and liable with the principal from the very instant he becomes surety, without regard to what his. principal may, or may not do, or be able to do, upon the maturity of the debt. He is bound with his principal as an original promisor, and may, or may not, at the election of the creditor, be sued jointly with the principal.

The contract of a guarantor is, in strictness, his own separate contract, and is collateral to that of the principal. Strictly speaking, the guarantor does not undertake to do the very thing which his principal is bound to do. It is rather in the nature of a warranty that the thing which the principal ought to do will be done, and in the event the principal fails the guarantor will himself thereafter answer for such failure. A guarantor answers for the default of his principal, while a surety is responsible at once on his direct promise to pay. A guarantor, unlike a surety, can not, as a general rule, be sued with his principal, inasmuch as his liability arises strictly from his individual contract.

A contract, or undertaking of guaranty, may, however, be so worded as to be a direct and absolute engagement to pay, and not collateral; and, although when a contract of guaranty takes that form it is, in a sense, in the nature of

suretyship, it is not a contract of suretyship in such a sense as to be irrevocable.

We are inclined to treat the guaranty in this case as of the original or absolute kind; as also continuing. But a promise of guaranty may, in most cases, be revoked by the guarantor.; not, of course, so as to prejudice the other party in so far as he has already acted upon it, but as to other or additional liability thereafter.

In 2 Parsons Contracts, under the head of "Revocation of Guaranty," that learned author says: "A promise of guaranty is always revocable at the pleasure of the guarantor by sufficient notice, unless it be made to cover some specific transaction which is not yet exhausted, or unless it be founded upon a continuing consideration, the benefit of which the guarantor can not or does not renounce."

In the case of *La Rose* v. *Logansport National Bank,* 102 Ind. 332, it is held that the rule, as above stated, is applicable to a continuing contract of guaranty, although there may be no stipulation in the contract of guaranty reserving the right of revocation.

It has been suggested by counsel for the appellants that, if there may be a revocation by notice, the notice must be in writing. We know of no authority which would require the notice to be in writing.

We cite the following authorities relative to the distinction between the nature and liability of surety and guarantor, as also where a contract of guaranty should be deemed what is designated as strict, or collateral, guaranty, and when direct and absolute. Brandt Suretyship and Guaranty, section 1; *Gaff* v. *Sims,* 45 Ind. 262; *La Rose* v. *Logansport National Bank, supra; Furst and Bradley Manufacturing Co.* v. *Black,* 111 Ind. 308; *Nading* v. *McGregor,* 121 Ind. 465; *Wright* v. *Griffith,* 121 Ind. 478; *Allen* v. *Hubert,* 49 Pa. St. 259; *Reigart* v. *White,* 52 Pa. St. 438; *Woods* v. *Sherman,* 71 Pa. St. 100; *Riddle* v. *Thompson,* 104 Pa. St. 330.

For examples of continuing guaranties, see the following cases, where certain instruments were held to amount to such : *Menard* v. *Scudder*, 7 La. Ann. 385; *Lowe* v. *Beckwith*, 14 B. Monroe, 184; *Scott* v. *Myatt*, 24 Ala. 489; *Gates* v. *McKee*, 13 N. Y. 232; *Michigan St. Bank* v. *Peck*, 28 Vt. 200.

There is nothing in the guaranty sued on, nor is there disclosed in the record anything which would preclude the appellee from revoking his undertaking of guaranty. There was evidence from which the jury might find that the guaranty was revoked, as alleged in the third and fourth paragraphs of the answer. And this the jury must be regarded as having found by their verdict for the appellee.

Counsel for the appellants urge as a further reason why the judgment should be reversed, that all payments made by Black after the revocation of the guaranty should have been applied by the jury on purchases made thereafter.

Up to the date of the revocation, to wit, June 8th, 1888, purchases had been made by Black to the amount of $433.11, and there was unpaid thereon at that time the sum of $308.11.   He, after the revocation, bought in different bills, to the amount of $781.31, and during the period covered by this amount paid in different sums $590.77.   All payments were made by Black.   The several bills constituting the account sued on were purchased at dates less than one month apart, and after the first purchase payments were made in each month that purchases were made.   From time to time, during the period covered by the entire account, statements were made out by the appellants showing the balance due, and presented to Black for payment.

A debtor who owes his creditor money on distinct and separate accounts, or debts, may direct his payments to be applied to either, as he pleases.   If the debtor omits to make any such appropriation, then the creditor has the right to apply the payments to such debts, due to him by the debtor, as he may choose.

Conduitt *et al. v.* Ryan.

The right of appropriation by the debtor applies, however, only to voluntary payments, and does not exist in case of payments *in invitum,* or by process of law. *Blackstone Bank* v. *Hill,* 10 Pick. 129 ; *Larrabee* v. *Lumbert,* 32 Maine, 97 ; *Cowperthwaite* v. *Sheffield,* 1 Sand. (S. C.) 416. And the creditor can not, at his discretion, appropriate payments made by his debtor after a controversy has arisen concerning such payments. *Applegate* v. *Koons,* 74 Ind. 247, and cases there cited.

It is certainly too late for either party to claim the right to make an appropriation after the controversy has arisen, and *a fortiori* at the time of the trial. And if the debtor pay with one intention and the creditor receive with another, the intent of the debtor must govern. *Reed* v. *Boardman,* 20 Pick. 441.

As to the right of the debtor, in the first instance, to control the application of payments made by him, and if he fail to do so, the right of the creditor to make the application, see 2 Parsons Contracts, p. 630; 1 Story Equity Jurisprudence, p. 451 ; *Bean* v. *Brown,* 54 N. H. 395 ; *Champenois* v. *Fort,* 45 Miss. 355 ; *Watt* v. *Hoch,* 25 Pa. St. 411 ; *Sherwood* v. *Haight,* 26 Conn. 432 ; *Calvert* v. *Carter,* 18 Md. 73 ; *Treadwell* v. *Moore,* 34 Maine, 112 ; *Irwin* v. *Paulett,* 1 Kan. 418.

If neither party make a specific appropriation of the money paid, then the law will apply it, in the language of Judge Story, "According to its own notion of the intrinsic equity and justice of the case." *Cremer* v. *Higginson,* 1 Mason, 323 ; 2 Parsons Contracts, p. 630.

When the duty of making the appropriation is thus imposed on the courts, the first question always is, what was the intention of the debtor, for although he may have made no express declaration upon the subject, yet if his intention can be gathered from the surrounding circumstances of the case, it must prevail. *Adams Express Co.* v. *Black,* 62 Ind. 128.

In *Emery* v. *Tichout,* 13 Vt. 15, the court said that in performing the duty of making the appropriation the courts have not always followed a uniform rule, but that " there is one rule which is clear, that is, whenever the intention of the parties at the time can be ascertained that will govern if it be not unlawful."

It is not shown that any special or express application of the payments was made by either Black or the appellants. The bill of particulars, however, filed with the complaint, is accompanied, as a part of it, with a statement of credits beginning with April 14th, 1888, as the first payment, and ending with January 28th, 1889, as the last, the total of which is subtracted from the entire bill purchased, and judgment asked for the remainder.

This has very much the appearance of an appropriation by the appellants themselves of the credits of payment to the items or bills of indebtedness in the order of time in which they stand in the account sued on. It is not an unreasonable inference from the evidence that the charges and credits, as found in the complaint, were taken from the books of the appellants as there entered.

Alexander B. Conduitt, one of the appellants, testified that the account of debits and credits as filed with the complaint was correct. When we consider that it is the theory of the complaint that the appellee is liable for the entire account pleaded, less the entire credits given, it is difficult to escape the conclusion that the appellants themselves regarded the payments made from time to time as extinguishing, to the extent thereof, the indebtedness shown by the account, in the order of time in which it arose and was charged against Black upon the appellants' books.

We think it not unreasonable, also, to infer that Black must have known, or had reason to believe, that such was the application being made of his payments, for in no other way would the balances arise which were presented to him for payment from time to time up to the commencement of

the action against the appellee. It does not appear that Black at any time made any objection to the state of the account, and his assent thereto may be inferred.

These considerations are important, in view of the rule that the appropriation may be implied from circumstances as well as by words. *Howland* v. *Rench,* 7 Blackf. 236 ; *Bayley* v. *Wynkoop,* 5 Gilman, 449.

In *Taylor* v. *Sandiford,* 7 Wheat. 13, Chief Justice MARSHALL said : "A payment may be attended by circumstances which demonstrate its application, as completely as words could demonstrate it."

It is plain that circumstances may furnish an equivalent to a declaration of appropriation.

When both parties concur in the entry of the payments upon general account, without specific appropriation, the law infers an intention on the part of both that they shall satisfy the charges therein in the order of their entry, and they will be so applied unless some controlling equity requires a different disposition. *Crompton* v. *Pratt,* 105 Mass. 255. This rule is especially applicable to items of debt and credit in a general account current. *Crompton* v. *Pratt, supra.*

But we think it is the law, where there is no appropriation, either express or implied, as already stated and explained, that the law will, in running accounts, make the appropriation according to the order of time in the items in the account, the first item on the debtor side being the first discharged by the first item on the credit side. *United States* v. *Wardwell,* 5 Mason, 82 ; *Postmaster General* v. *Furber,* 4 Mason, 333 ; *Shedd* v. *Wilson,* 27 Vt. 478 ; *Wendt* v. *Ross,* 33 Cal. 650 ; *McKenzie* v. *Nevius,* 9 Shep. 138 ; *Fairchild* v. *Holly,* 10 Conn. 175 ; *Dows* v. *Morewood,* 10 Barb. 183 ; *Sprague* v. *Hazenwinkle,* 53 Ill. 419 ; *Caldwell* v. *Wentworth,* 14 N. H. 431 ; *Harrison* v. *Johnston,* 27 Ala. 445 ; 1 Story Eq. Jur., sections 459*b* and 459*c ;* 2 Parsons Contracts, p. 633.

Counsel for the appellants contend that no part of the

payments made by Black after revocation should have been applied by the jury on the indebtedness existing at the date of the revocation. They claim, inasmuch as the guaranty to the appellee secured whatever was unpaid on the 8th of June, 1888, the date of the revocation of the guaranty, that payments made thereafter should have been applied wholly on the indebtedness incurred by Black thereafter.

The rule that payments not otherwise appropriated by the parties will, by the law, be applied to the most precarious security, does not, in our opinion, apply to cases like that disclosed by the evidence in the case at bar. The account sued on is a running account. The facts do not present a case of distinct, isolated debts.

Whoever will with care examine the decided cases can not fail to reach the conclusion that the doctrine of the application or appropriation of payments is regarded as being mainly, if not wholly, applicable to cases where the debts are entirely distinct and separate in their origin.

In Chitty Contracts, 1116, it is said: "And, *prima facie*, the doctrine as to the appropriation of payments does not apply where there are not *distinct* accounts ; or where *separate* accounts are treated as an *entire* account by all the parties. In such cases, therefore, payments made generally are presumed to have been made in discharge of the *earlier* items of the account." The words italicized are so in the text.

In 1 Story Equity Jurisprudence, section 459*a*, we find the following: " In the next place, where there are no *running accounts* between the parties, and the debtor himself makes no special appropriation of any payment, there the creditor is generally at liberty to apply that payment to any one or more of the debts which the debtor owes him, whether it be upon an account or otherwise." The italics are our own.

In section 459*g* the same author says that in payments

upon running accounts there is "an implied appropriation by the parties to the account generally."

The case of *Devaynes* v. *Noble*, 1 Merivale, 528 (known as Clayton case), related to the appropriation of payments in a banker's running account. The case is celebrated, and has often been cited with the greatest approbation. Sir William GRANT, Master of the Rolls, in that case said:

"In such a case, there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place, and are carried into the account. Presumably, it is the sum that is first paid in that is first drawn out. It is the first item on the debit side of the account that is discharged, or reduced, by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other. Upon that principle, all account currents are settled, and particularly cash accounts. When there has been a continuation of dealings, in what way can it be ascertained whether the specific balance due on a given day has, or has not, been discharged, but by examining whether payments to the amount of that balance appear by the account to have been made. You are not to take the account backwards, and strike the balance at the head, instead of the foot."

In the case of running accounts the rule we have been considering will apply although part of the account is covered by guaranty or surety.

In 1 Story Equity Jurisprudence, section 459*g*, the author says: "The cases which we have hitherto been considering are cases of running accounts; and under such circumstances the rule will apply equally to cases where a part of the debt is secured by a guaranty or by sureties, as well as where there are no such parties." See, also, *Truscott* v. *King*, 2 Selden, 147 ; *Worthley* v. *Emerson*, 116 Mass. 374 ; *Cushing* v. *Wyman*, 44 Maine, 121 ; *Harrison* v. *Johnston*, *supra*.

We are referred by counsel for the appellants to the case

of *King* v. *Andrews,* 30 Ind. 429, and the case of *Bond* v. *Armstrong,* 88 Ind. 65. These are not in conflict with the authorities we have cited. They were not cases of running accounts, but, on the contrary, the debts in each of those cases were distinct and independent debts, and not different items or bills, making up or constituting a running account.

The refusal of the court to give an instruction asked by the appellants, and the giving of certain instructions asked for by the appellee, are among the grounds assigned for a new trial.

The instructions are not properly in the record, and therefore can not be considered by us. The statute provides how instructions may become a part of the record without a bill of exceptions. Sections 533, 535, R. S. 1881. The instructions are copied into the transcript by the clerk, but there is nothing to indicate that they were ever filed as a part of the record. As was said in *O'Donald* v. *Constant,* 82 Ind. 212, and *Elliott* v. *Russell,* 92 Ind. 526, " The transcript contains no copy of the clerk's notation of the filing, nor any recital that they were filed." In order that instructions may be made a part of the record without a bill of exceptions, the record must show affirmatively that they were filed. *Fort Wayne, etc., R. W. Co.* v. *Beyerle,* 110 Ind. 100; *Beem* v. *Lockhart,* 1 Ind. App. 202.

It has been decided in many cases that to make instructions a part of the record without a bill of exceptions, they must not only be excepted to as provided by section 535, *supra,* but they must also be signed and *filed.* The statute must be strictly complied with. When this is not done no question is presented involving the action of the court in the giving or refusing of instructions asked. This rule has been rigidly adhered to, because it is founded upon a plain and positive statute, which the courts can not vary. *Landwerlen* v. *Wheeler,* 106 Ind. 523; *Childress* v. *Callender,* 108 Ind. 394; *Butler* v. *Roberts,* 118 Ind. 481.

The instruction said to have been asked for by the appel-

lants and refused is not signed by them nor by their attorneys. Error can not be assigned upon the overruling of a motion for a new trial based upon the refusal to give an instruction not signed by the party or his attorney asking the same. *Heaton* v. *White*, 85 Ind. 376 ; *Chicago, etc., R. R. Co.* v. *Hedges*, 105 Ind. 398; *Craig* v. *Frazier*, 127 Ind. 286.

We are asked to reverse the judgment upon the evidence. This we can not do. We think there was evidence tending to sustain the verdict in all material respects. The jury, in finding for the defendant, must have treated payments made subsequent to the revocation of the guaranty as in discharge of items and bills in the account antecedently due in the order of time in which they stood in the account as declared upon in the complaint. This we think the jury were warranted in doing under the law, and we also think that the evidence tended to show that the payments were so appropriated by Black and the appellants.

We find no error.

The judgment is affirmed, with costs.

ROBINSON, J., took no part in the decision of this case.

Filed Nov. 11, 1891.