## NEWCOMB BROTHERS WALL PAPER COMPANY
### *v.* EMERSON.

[No. 2,160.    Filed April 29, 1897.]

CONTRACT.—*Guaranty.*—*Notice.*—*Acceptance.*—An agreement in the words: "Gentlemen—R. E. Emerson, of Pueblo, Colorado, desires to make purchases from your firm. I will engage to secure sales you make to the above named, in the sum of $300.00," is not a strict guaranty, but an original undertaking, and in an action based thereon it is unnecessary to aver or prove notice of acceptance thereof.

From the Whitley Circuit Court. *Reversed.*

*T. R. Marshall, W. F. McNagny* and *P. H. Clugston,* for appellant.

*Andrew A. Adams,* for appellee.

HENLEY, J.—Appellant was the plaintiff below, and began this action against appellee by complaint in three paragraphs. The full text of the complaint is as follows:

"1st Paragraph. The plaintiff, a corporation duly organized under the laws of the state of Missouri, complains of the defendant, and says: That upon the 22d day of December, 1892, the defendant entered into a written contract of suretyship with the plaintiff, by the name of Newcomb Brothers, as follows, to-wit:

"'SOUTH WHITLEY, IND., Dec. 22, 1892. NEWCOMB BROTHERS, St. Louis, Mo.

Gentlemen: R. E. Emerson, of Pueblo, Colorado, desires to make purchases from your firm. I will engage to secure sales you make to the above named, in the sum of three hundred dollars. M. B. EMERSON.'

"That subsequently to the entering in of said con-

tract of suretyship, and upon the faith and credit thereof, and upon no other or different consideration unto the plaintiff moving, the plaintiff sold and delivered to said R. E. Emerson, goods, wares and merchandise of the value of $300.55; for the said goods, wares and merchandise said R. E. Emerson has never paid; that the said R. E. Emerson is hopelessly and notoriously insolvent; that plaintiff, before the commencement of this suit, has demanded said sum of $300.00 of the defendant; and that the defendant has failed, neglected and refused to pay the same. Wherefore, plaintiff prays judgment in the sum of $350.00, and for all proper relief.

"2d Paragraph. And, for a further and second paragraph of complaint, plaintiff complains of the defendant, and says: That the plaintiff is a corporation duly organized under the laws of the state of Missouri; that as guarantor for one R. E. Emerson on the 22d day of December, 1892, the defendant entered into the following contract of guaranty with the plaintiff, under the name of Newcomb Brothers, to-wit: [Here is inserted a copy of the letter as set out in the first paragraph.] That upon the faith and credit of said contract of guaranty, and upon no other or different consideration unto it moving, the plaintiff did thereafter sell and deliver to the said R. E. Emerson goods, wares and merchandise of the value of $300.00; that subsequently, the said R. E. Emerson became insolvent, and before he had paid for the said goods, wares and merchandise so sold and delivered to him by the plaintiff, as aforesaid; that, immediately upon such insolvency becoming known to the plaintiff, it notified the defendant of the fact of his insolvency, to-wit: on or before the 1st day of July, 1893, by reason whereof a cause of action has accrued to the plaintiff. Wherefore, plaintiff demands judgment," etc.

"3d Paragraph. The plaintiff, a corporation duly organized under the laws of the state of Missouri, for a third and further paragraph of complaint, complains of the defendant, and says: That upon the 22d day of December, 1892, the defendant entered into a written contract with the plaintiff, by the name of Newcomb Brothers, as follows, to-wit: [Here is set out the letter as appears in the first paragraph]; that subsequently to the entering into of said contract, and upon the faith and credit thereof, and upon no other or different consideration unto the plaintiff moving, the plaintiff sold and delivered to said R. E. Emerson, goods, wares and merchandise of the value of $300.55, for which said goods, wares and merchandise the said R. E. Emerson has never paid; that said R. E. Emerson is hopelessly and notoriously insolvent; that upon learning of the insolvency of R. E. Emerson, plaintiff herein notified defendant herein of that fact, and received from him the following acknowledgment of his promise and contract aforesaid, and the ratification of the sale made by them to the said R. E. Emerson, to-wit:

"'South Whitley, Ind.

Newcomb Brothers, St. Louis, Mo.

Dear Sirs: Received yours of the 26th inst., notifying me of the failure of R. E. Emerson, of Pueblo, Colorado. Had learned of the failure some time ago, and that they were trying to make you safe by attachment on the goods, which I suppose has failed. Will write R. E. Emerson to-day and learn the situation; and if the account cannot be made of them, I will arrange to meet the amount vouched for, $300.00.

Yours truly,    M. B. Emerson.'

"That, before the commencement of this suit the plaintiff demanded the said sum of $300.00 of the defendant; and that the defendant has failed, neglected

Newcomb Brothers Wall Paper Company *v.* Emerson.

and refused to pay the same. Wherefore, plaintiff prays judgment in the sum of $350.00 and all proper relief."

Appellee demurred to each paragraph of the complaint, which demurrer was sustained; and, appellant refusing to plead further, judgment was rendered against it for costs.

The only errors assigned relate to the ruling of the lower court in sustaining the demurrer to the various paragraphs of the complaint. The first paragraph of the complaint proceeds upon the theory that appellee is the surety of R. E. Emerson for $300.00. The second paragraph proceeds upon the theory that, by the written instrument therein set out, appellee became the guarantor for R. E. Emerson for the amount of $300.00. The third paragraph sets out the written instrument by which the appellant seeks to make appellee liable, and further alleges a written ratification by the appellee of the sales made thereunder, and an additonal promise to pay.

The question now arises as to what effect shall be given to the instrument of writing upon which each paragraph of the complaint is based.

We shall not go extensively into a discussion of the different relations assumed by guarantors and sureties, or digest the cases which attempt to draw a line of distinction between contracts of suretyship and guaranty, and of the different classes of each. This court has defined guaranty to be an undertaking that the debtor shall pay; suretyship, an undertaking that the debt shall be paid. *Shearer* v. *R. S. Peale & Co.*, 9 Ind. App. 282.

The Supreme Court, in the case of *Nading* v. *McGregor*, 121 Ind. 465, 6 L. R. A. 686, said: "It is often a question of very great difficulty to determine whether a particular instrument of writing constitutes

a strict guaranty, or whether it constitutes an original undertaking. In a strict guaranty, the guarantor does not undertake to do the thing which his principal is bound to do, but his obligation is that the principal shall perform such act as he is bound to perform, or in the event he fails, that the guarantor will pay such damages as may result from such failure.

"It is this feature which enables us to distinguish a strict or collateral guaranty from a direct undertaking or promise. So that when an instrument of writing resolves itself into a promise or undertaking on the part of the person executing it to do a particular thing which another is bound to do, in the event such person does not perform the act himself, it is said to be an original undertaking, and not a strict or collateral guaranty. In the latter class of contracts the undertaking is in the nature of a surety, and the person bound by it must take notice of the default of his principal."

A more elaborate and extensive construction of the contract of guaranty is found in the case of *Conduitt v. Ryan*, 3 Ind. App. 1, where this court said: "The contract of a guarantor is, in strictness, his own separate contract, and is collateral to that of the principal. Strictly speaking, the guarantor does not undertake to do the very thing which his principal is bound to do. It is rather in the nature of a warranty that the thing which the principal ought to do will be done, and in the event the principal fails, the guarantor will himself thereafter answer for such failure. A guarantor answers for the default of his principal, while a surety is responsible at once on his direct promise to pay. A guarantor, unlike a surety, cannot, as a general rule, be sued with his principal, inasmuch as his liability arises strictly from his individual contract.

"A contract, or undertaking of guaranty, may, however, be so worded as to be a direct and absolute engagement to pay, and not collateral; and, although when a contract of guaranty takes that form it is, in a sense, in the nature of suretyship, it is not a contract of suretyship in such a sense as to be irrevocable."

The question then arises, is the instrument upon which this action is founded a strict guaranty, or is it an original undertaking, to become binding upon delivery. If it belongs to the former class, notice of its acceptance was necessary to hold the appellee; if of the latter class, no notice was necessary. *Shearer* v. *R. S. Peale & Co., supra; Bryant* v. *Stout,* 16 Ind. App. 380; *Conduitt* v. *Ryan, supra; Lane* v. *Mayer,* 15 Ind. App. 382.

The late case of *Lane* v. *Mayer, supra,* decided by this court, seems to us to be so nearly like this case as to be decisive of the question involved herein. We quote from the opinion: "The appellees sued the appellant on the following written agreement: 'Lebanon, Ind., November 11, 1892. Messrs. Charles Mayer & Co., Indianapolis, Ind.—Gents: I hereby agree to hold myself responsible for, and agree to pay for, any goods and merchandise which may be purchased of you by A. L. Lane, Lebanon, Indiana, to the amount of five hundred dollars ($500.00). Wes. Lane, Cashier First Nat. Bank.' It was averred that this instrument was delivered to the appellees, and that, in reliance thereon, they sold to A. L. Lane goods and merchandise of the value of $180.52. There was no averment that the appellees gave the appellant notice that they had accepted the obligation and would act upon it. Nor does the evidence show that the appellees gave the appellant notice of their acceptance. It is insisted that the appellant cannot be held liable, in the absence of an averment and proof of such notice.

"If the instrument sued on is a strict guaranty, then notice of acceptance was essential before the appellant could be held liable. Without acceptance, the minds of the contracting parties could not agree upon the same terms, and no contract could be completed. Until accepted, and notice of such acceptance given, it would only be a naked proposition. But if the instrument is an original undertaking, it became binding upon delivery, and no notice of acceptance was necessary. * * * A contract, although purporting to be a guaranty, may be so worded as to make it an original undertaking. In such cases the liability of the person executing it is analogous to that of a surety on a bond. It is often difficult to determine whether or not a given instrument is an original or a collateral undertaking; and there is some conflict of authority bearing upon this subject. Each case must, in a large measure depend upon its own peculiar circumstances and words used in the contract or written instrument. * * * * * * Following these recent cases, we are of the opinion that the contract declared on in this case is an original undertaking, and that it was not necessary to aver or prove notice of acceptance."

The instrument upon which this action is founded is so worded that, under the decisions of this State, especially the later ones, it is a direct and absolute engagement to pay. Consequently, under these decisions, no notice was necessary to appellee of its acceptance.

It might be further said that appellant's argument in regard to the construction placed upon the instrument by the party bound thereby, as affects the third paragraph of complaint, is not without merit.

We are of the opinion, however, that each paragraph of the complaint states a cause of action against

appellee. It having been suggested that the appellee has departed this life since the submission of this cause, judgment is rendered as of the term when the submission was made.

The judgment of the lower court is, therefore, reversed, with instructions to overrule the demurrer to the first, second, and third paragraphs of the complaint, and for further proceedings in accordance with this opinion.