VIDIMOS, INC., Appellant (Defendant Below),

and

First National Bank of East Chicago, Appellee (Defendant Below),

v.

Robert J. VIDIMOS, Appellee (Plaintiff Below).

No. 3–982A249.

Court of Appeals of Indiana, Third District.

Nov. 23, 1983.

Rehearing Denied Jan. 20, 1984.

J.B. Smith, Robert F. Parker, Beckman, Kelly & Smith, Hammond, for appellant.

Fred G. Donnersberger, Orest ·S. Szewciw, Donnersberger & Reid, Hammond, Joseph E. Costanza, Murphy, McAtee, Murphy & Costanza, East Chicago, for appellees.

GARRARD, Judge.

This is a certified interlocutory appeal from the entry of a partial summary judgment. It involves the financial dealings between a family-owned corporation and a bank when there has been a falling out among the members of the family.

Vidimos, Inc. (the Corporation) is an Indiana corporation whose shareholders are Antoinette S. Vidimos and her three sons, Alfred, Francis and Robert. Robert was president of the Corporation from its creation in 1966 until 1974. He was an officer thereafter until 1977 when his employment with the corporation was terminated. All four shareholders are directors, as is Terry Eich, the president of First National Bank of East Chicago (the Bank).

On March 4, 1971 the Corporation executed and delivered to the Bank its promissory note for $465,000.00. This note was secured by a real estate mortgage upon the principal place of business of Vidimos, Inc.

On March 28, 1974 the Bank required the four shareholders of the Corporation to execute guarantees of the Corporation's indebtedness as a condition to continued financing of the Corporation by the Bank.[1] Later on,

---

1. The guaranty provided as follows:

"GUARANTY

The undersigned hereby requests the FIRST NATIONAL BANK OF EAST CHICAGO, INDIANA to give and continue to give VIDIMOS, INC. (herein called "Borrower") credit, as the Borrower may desire and said Bank may grant, from time to time, whether to the Borrower alone or to the Borrower and others, and in consideration of any credit given, the undersigned hereby absolutely and unconditionally guarantees prompt payment when due and at all times thereafter of any and all indebtedness and liability of every kind, nature and character and all renewals, extensions and modifications thereof now existing or which may hereafter exist from the Borrower to said Bank, howsoever and whensoever created, or arising, or evidenced or acquired; and the undersigned waives notice of the acceptance of this guaran-

in 1976, the Bank additionally required the shareholders to execute an agreement subordinating any debts from the Corporation to the shareholders to the Bank's claims.

The mortgage and secured note prohibited certain activities. The mortgage prohibited the Corporation from selling any part of the mortgaged property without written consent from the Bank and required that all income from the property be applied to discharge the debt secured by the mortgage. In 1979 the Corporation sold a portion of the property but did not apply the proceeds to discharge the debt. Robert Vidimos objected to both these actions. The secured note prohibited the Corporation from paying dividends, making capital expenditures in excess of 10% of the value of the Corporation's fixed assets or from paying bonuses to its officers in excess of a certain amount. Under the terms of the note these activities were proper only if prior written consent to them was secured from the Bank. The Corporation appears to have violated all three provisions. It paid dividends in 1980 and 1981, paid "excessive" officer bonuses in 1979 and 1980, and made an "excessive" capital expenditure in 1978. The Bank did not give written consent to any of these actions. Robert Vidimos also objected to all these activities by the Corporation.

On May 15, 1981 Robert Vidimos filed a complaint seeking declaratory judgment, damages, appointment of a receiver, and an accounting. The complaint alleged that since the Corporation had violated the terms of the mortgage and secured note and the Bank had acquiesced in those violations, the guaranty and subordination agreement executed by Vidimos were terminated.[2] The complaint was addressed to the Corporation, the Bank, and to Alfred, Francis and Antoinette Vidimos. Robert Vidimos asked repayment of the $201,784.00 the Corporation owed to him and punitive damages for the malicious and oppressive conduct of the collective defendants.

The trial court dismissed Alfred, Francis and Antoinette as defendants. It also dismissed Robert's prayers for an accounting and for the appointment of a receiver. Subsequently the court granted a partial summary judgment in which it determined that while the continuing guaranty contemplated no method of revocation and bound the guarantor for his life, such a provision was contrary to public policy; that the commencement of the lawsuit by Robert Vidimos on May 15, 1981 constituted a sufficient attempt by Robert Vidimos to revoke his continuing guaranty; and that the guaranty and subordination agreement should be effective to all amounts loaned to the Corporation prior to the 15th day of May, 1981, but that notes issued after the 15th of May, 1981 were not the subject of the guaranty and subordination agreement executed by Robert Vidimos. At this time the court also denied a motion for summary judgment filed by Vidimos, Inc. on the basis that there were genuine issues of fact which might create liability on the part of the Corporation to its guarantor, Robert Vidimos. The partial summary judgment was certified for interlocutory appeal and Vidimos, Inc. now charges that it was error for the court to find the guaranty revocable

ty and of any and all such indebtedness and liability, renewals, extensions and modifications thereof, at any time. The undersigned hereby waives presentment, protest, notice, demand or action on delinquency in respect of any such indebtedness.

This guaranty is made and shall continue without regard to collateral, or security, or guaranties, or other obligors, if any, or to the validity or effectiveness of any and all thereof, and any and all such collateral and security and guaranties and other obligors, if any, may, from time to time without notice to or consent of the undersigned, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms or conditions as may be acceptable to said Bank, without in any manner affecting or impairing the liability of the undersigned.

This guaranty shall also bind the heirs, personal representatives, successors and assigns of the undersigned and shall inure to the Bank, its successors and assigns.

2. The complaint also asserted there had been an impairment of collateral so as to discharge Robert Vidimos from the guaranty pursuant to IC 26-1-3-601-606.

or unenforceable as a violation of public policy.

The Corporation first argues that the trial court erred in finding the guaranty revocable. The trial court determined that the guaranty and subordination agreement constituted a continuing guaranty with no method of revocation or termination. The court further found that "as a matter of law ... a method of revocation must exist," and that Robert Vidimos' filing of his complaint on May 15, 1981 sufficed to revoke the continuing nature of the guaranty. The Corporation argues that this was error because the circumstances surrounding the execution of the guaranty indicated that it was not intended to be revocable. It argues that instead the guaranty was intended to be irrevocable because it was executed in contemplation of future extensions of credit by the Bank. This argument misinterprets the law of continuing guaranty.

■ A guaranty is a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some duty in the case of the default of another. *Indiana University v. Indiana Bonding & Surety Company* (1981), Ind. App., 416 N.E.2d 1275; *Indianapolis Morris Plan Corp. v. Sparks* (1961), 132 Ind.App. 145, 172 N.E.2d 899. A guaranty may be either continuing or restricted. 38 *Am. Jur.2d* "Guaranty" Section 23. A restricted guaranty is limited to a single transaction. A continuing guaranty is not limited to a single transaction, but contemplates a future course of dealing encompassing a series of transactions. *Cargill, Inc. v. Buis* (7th Cir.1976), 543 F.2d 584 (applying Indiana law); *Trustees of the Presbyterian Board of Publication & Sabbath-School Work v. Gilliford* (1894), 139 Ind. 524, 38 N.E. 404. Because a continuing guaranty may be for an indefinite period, it is effective until revoked or until extinguished by some rule of law. 139 Ind. 529–30. A continuing guaranty involves, at any given time, two legal concepts: There is a contract between the guarantor and creditor as to transactions which have already been consummated, and there is an offer as to future transactions between the creditor and the guarantor's principal debtor. The offer portion of the continuing guaranty is revocable by the guarantor although a revocation does not alter existing liability for past transactions which have become binding contracts. 38 *Am.Jur.2d* "Guaranty" Section 63.

■ A continuing guaranty which is for an indefinite period is revocable by the guarantor provided that he does so reasonably. *LaRose v. The Logansport National Bank* (1885), 102 Ind. 332, 344–45, 1 N.E. 805, 812; *Conduitt v. Ryan* (1891), 3 Ind. App. 1, 29 N.E. 160. This right of revocation exists absent any provision in the guaranty agreement recognizing it. 102 Ind. at 345, 1 N.E. at 812.

"A holding that [one] who once signs an indemnity bond, without limitation as to time, is thereby bound for all time, and even his estate after his decease, is a rule ... not ... founded on either reason or justice."

*National Liberty Insurance Co. of America v. Meyer* (1926), 21 Ohio App. 385, 153 N.E. 162, 163. *See also* 10 S. Williston, *A Treatise on the Law of Contracts* Section 1253, n. 3 and accompanying text (3rd ed. 1967).

■ Robert Vidimos' continuing guaranty, created by the guaranty and subordination agreement, was revocable. It was a continuing guaranty for an indefinite period of time. As such, Robert Vidimos could revoke that portion of his legal obligation which was merely an offer of future liability. Such a revocation is characterized as the withdrawal of an offer not yet accepted or supported by consideration. A continuing guaranty offer, like a continuing contractual offer, is revocable if it is not supported by "continuing consideration, the benefit of which the guarantor does not renounce." 102 Ind. at 345, 1 N.E. at 812. The trial court was correct in holding that the guaranty was revocable and was revoked by the filing of the May 15, 1981 complaint. It was also correct in holding that the revocation did not affect liability which had accrued before May 15, 1981.

The Corporation also argues that the court erred in holding the guaranty and subordination agreement unenforceable as contravening public policy. While we think this misstates the import of the court's decision, it is a matter we need not go into. If the court's decision on summary judgment was correct for any reason, it is our duty to affirm the court. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154. Because we have determined that the continuing guaranty created by the guaranty and subordination agreement was revocable under Indiana law, we need not reach the public policy question. Accordingly, the trial court is affirmed.

HOFFMAN, P.J., and STATON, J., concur.