Leo HOUIN, Defendant-Appellant,

v.

BREMEN STATE BANK,
Plaintiff-Appellee.

No. 3–785A171.

Court of Appeals of Indiana,
Third District.

July 28, 1986.

Joseph V. Simanski, Plymouth, for defendant-appellant.

Mark E. Wagner, Kizer, Neu, Joyce, Wyland, Humphrey, Wagner & Gifford, Bremen, for plaintiff-appellee.

GARRARD, Judge.

Leo Houin (Houin), defendant below, appeals the Starke Circuit Court's decision to enforce a continuing guaranty executed by him on or about December 23, 1975 in favor of the Bremen State Bank (Bank). The contract guaranteed the present and future indebtedness of Houin's daughter and son-

in-law, Louise and Gary Webster (Websters). The guaranty document was prepared by the Bank, but it was executed at Houin's residence. From 1976 through 1979, loans were subsequently obtained by the Websters to finance their farming operations.

The trial court specifically found that in mid-June 1976, Houin went to the Bank and orally notified Hilton Swain, then Bank president, that he wanted no more money loaned to the Websters. There is no evidence that the Bank ever treated this action as a termination or ever acknowledged or accepted it as such, and on February 2, 1978, at the Bank's request, Houin furnished the Bank with his personal financial statement.

On November 23, 1979, a new note was executed by the Websters in the sum of $94,255.03. The Websters defaulted on the note and a suit to collect against the Websters and Houin, as guarantor, was commenced in the Marshall Circuit Court on April 27, 1980. Houin obtained an attorney and filed his answer and affirmative defenses. The Websters subsequently obtained approximately $30,000.00 from the Farmers Home Administration and the suit was dismissed by the Bank on August 22, 1980.

On August 26, 1980 a new note was executed which displayed the receipt of $30,000.00. No new funds were advanced. The Websters subsequently filed bankruptcy and were discharged. Notice of default and demand for payment was sent by the Bank to Houin by certified mail. On March 11, 1985 the trial court ordered judgment against Houin and in favor of the Bank in the sum of $163,789.15. Other facts as necessary will appear in the body of the opinion.

On appeal Houin presents us with the following issues:

I. Whether the trial court erred in refusing to dismiss the Bank's complaint for failure to comply with Indiana Rules of Procedure, Trial Rule 9.2(A).

II. Whether the trial court erred in finding that the Bank's complaint stated a cause of action.

III. Whether the Bank failed to make demand for payment upon Houin prior to the filing of the action.

IV. Whether the guaranty was supported by consideration, both initially and for subsequent loans.

V. Whether the guaranty in question was an unconscionable contract.

VI. Whether there was a valid termination of the guaranty by Houin.

VII. Whether there was a material alteration in the Websters' obligation which discharged Houin from all liability under the guaranty.

VIII. Whether the Bank failed to give Houin notice of default which discharged Houin from liability.

IX. Whether the doctrine of equitable estoppel applied to discharge Houin from liability.

We affirm.

## I.

Initially, Houin raises as error the trial court's refusal to dismiss the Bank's complaint for failure to comply with Trial Rule 9.2(A). TR 9.2(A) provides that "[w]hen any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading." It is clear that the Bank's claim is founded on the written guaranty signed by Houin, since the scope of Houin's duty is completely governed by the terms of this instrument. Thus, insofar as the Bank sought to bring an action on the guaranty, TR 9.2(A) required it to attach the continuing guaranty to its complaint. It is undisputed that the Bank did not do so.

The Bank's failure to comply with the pleading requirements of TR 9.2(A) does not, however, warrant dismissal of its complaint. Under the trial rules, the effect of noncompliance is governed by TR 9.2(F).

TR 9.2(F) states in part that "[t]he court, in its sound discretion, may order compliance, the reasons for noncompliance to be added to the pleadings, *or allow the action to continue without further pleading.*" (emphasis added) In this case, the trial court denied Houin's motion to dismiss and allowed the action to continue without further pleading. This cannot be held to be an abuse of discretion especially since Houin received a copy of the written guaranty as part of the Bank's requests for admissions. The case of *Wilson v. Palmer* (1983), Ind. App., 452 N.E.2d 426, cited by Houin did not contemplate dismissal on the merits, but dismissal with leave to amend which was not necessary here since Houin admitted that the written guaranty attached to the Bank's requests for admissions was a true and accurate copy.

## II.

▮ Houin also alleges that the Bank's complaint failed to state a cause of action upon which relief could be granted in that it failed to state that the principal debtors were in default. Indiana is a notice pleading state. Under notice pleading all that is required in a complaint is a clear and concise statement that will put the defendant on "notice" as to what has taken place and the theory that the plaintiff plans to pursue. *Farm Bureau Insurance Company v. Clinton* (1971), 149 Ind.App. 36, 269 N.E.2d 780. Attorneys for both parties will have ample opportunity in discovery to learn all facts necessary to fully represent the interests of their clients. 269 N.E.2d at 782–83. Thus, the elements required to state a cause of action are not required and the plaintiff is heavily favored so far as getting into court. *Id.* Through his interrogatories to the Bank, Houin learned that the Websters were in default. Therefore, the trial court did not err by denying Houin's motion to dismiss for failure to state a claim.

## III.

▮ Houin argues that the Bank failed to demand payment from him as guarantor as required by the continuing guaranty. In assessing Houin's arguments, we will not weigh the evidence. We will consider only whether the evidence favorable to the judgment was sufficient to support the decision. *Courtesy Enterprises, Inc. v. Richards Labs* (1983), Ind.App., 457 N.E.2d 572, 575. In this case, the Bank sent Houin a demand letter before instituting action on the continuing guaranty, and two days later the Bank received a certified mail receipt card signed by Houin. Moreover, in his answers to the Bank's requests for admissions, Houin admitted receiving formal demand for payment. Thus, the evidence favorable to the judgment is sufficient to support the trial court's decision that demand for payment was made upon Houin.

## IV.

▮ Houin contends that there was insufficient consideration for the execution of the guaranty, both initially and for subsequent loans made to the Websters. For consideration to exist, it is not necessary for the guarantor to derive any benefit from the principal contract or the guaranty. *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379, 1385. If a guaranty is made at the time of the contract to which it relates, so as to constitute part of the consideration for the contract, sufficient consideration exists. *Id.* at 1384; *Davis v. B.C.L. Enterprises, Inc.* (1980), Ind.App., 406 N.E.2d 1204. For instance, there is consideration where the guaranty induces the promisee to execute the main contract with the principal. 441 N.E.2d at 1385.

▮ In this case, the continuing guaranty was signed by Houin at the insistence of the Bank. Moreover, in his answers to the Bank's requests for admissions, Houin admitted that the continuing guaranty was executed to induce the Bank to extend credit to the Websters. Thus, the undisputed facts demonstrate that consideration did exist, and the continuing guaranty was effective until revoked, or until extinguished by some rule of law. *Vidimos, Inc. v.*

*Vidimos* (1983), Ind.App., 456 N.E.2d 455, 458.

### V.

Both parties cite *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144 in dealing with the alleged error of unconscionability of the guaranty contract. A contract may be declared unenforceable due to unconscionability when there is a great disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly or unaware of its terms. *Dan Purvis Drugs, Inc. v. Aetna Life Ins.* (1980), Ind.App., 412 N.E.2d 129, 131. Further, as stated in *Weaver,* a contract is unconscionable if it is "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." 276 N.E.2d at 146.

While a disparity in bargaining power did exist between the Bank and Houin, it cannot be said that this disparity lead Houin to sign the guaranty unwillingly or unaware of its terms. Unlike *Weaver,* no agent of the Bank was present requesting Houin to "sign" the guaranty. Instead, Houin was in the comfort of his own home surrounded only by family members. Secondly, the instrument was plainly entitled "CONTINUING GUARANTY." The term itself would clearly disclose that the instrument contemplated a series of transactions. Furthermore, unlike the service station operator in *Weaver,* Houin clearly was in a position to shop around for better terms or directly loan the Websters the money to get started as farmers. Indeed there was no evidence presented that he either objected to or sought any modification whatever in the terms of the guaranty. Upon the record it is no more than conjecture that the Bank would have been unwilling to make any modifications to the proposed guaranty.

Houin also alleges that the guaranty is unconscionable in form in that no limit as to time or amount of loans was set and the contract called for Houin to waive notice of future loans. While it is true that the guaranty was prepared by the Bank and contained terms which were favorable to it, this does not mean that the contract was unconscionable. Guaranties with such provisions have regularly been enforced. *See Skrypek v. St. Joseph Valley Bank* (1984), Ind.App., 469 N.E.2d 774; *Vidimos, supra.* Moreover, contracts are not unenforceable merely because one party enjoys an advantage over the other. In this case, the continuing guaranty cannot be defined as being "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." 412 N.E.2d at 131.

### VI.

Appellant alleges that he made an oral revocation of the guaranty in June of 1976, and that the trial court explicitly found this to be so. The Court of Appeals may not contradict any special findings made by the trial court unless clearly erroneous. *Best v. Best* (1984), Ind.App., 470 N.E.2d 84, 86. Here the trial court did specifically find that Houin orally notified the Bank that he wanted no more money loaned to the Websters. Thus, these findings control. *Id.*

It is widely recognized that a continuing guaranty which is for an indefinite period is revocable by the guarantor provided that he does so reasonably. *LaRose v. The Logansport National Bank* (1885), 102 Ind. 332, 344–45, 1 N.E. 805, 812; *Vidimos,* 456 N.E.2d at 458. It is further recognized that such a revocation may be made orally. *Conduitt v. Ryan* (1891), 3 Ind.App. 1, 29 N.E. 160. This right exists absent any provision in the guaranty agreement recognizing it. *LaRose,* 1 N.E. at 812. However, in none of the above cases was there a provision in the guaranty specifically providing a method of revocation. Here the guaranty explicitly stated that Houin could revoke his guaranty as to any new indebtedness by delivering signed notice to the Bank of his intent to do so. It has long been common-

place in the law to recognize the propriety of requiring formality for certain significant acts. To do so avoids both uncertainty of meaning and of purpose. Our statutes of frauds provide a legislative example. In the present case it is undisputed that no such notice was given. The nature and extent of the guarantor's liability depends on the terms of his contract. *Orange-Co., Inc. v. Brown* (1979), 181 Ind. App. 536, 393 N.E.2d 192, 195. Thus the giving of oral notice of revocation when the contract called for written notice was not reasonable because it was not what the parties bargained for in this instance. This is underscored by the fact that both parties admit there was no evidence that the Bank ever treated this action as a termination or ever acknowledged or accepted it as such.

■■■ Houin further contends that the filing of his answer and affirmative defenses on June 17, 1980 constituted a revocation of the continuing guaranty. Houin correctly cites *Vidimos, supra* for the proposition that a continuing guaranty is revocable and was revoked in that case by the guarantor filing a complaint. 456 N.E.2d at 458. However, we need not reach the question of whether a responsive pleading can constitute a sufficient attempt by Houin to revoke the continuing guarantee. No new money was loaned to the Websters after June 17, 1980. Execution of the new note was merely a renewal of existing indebtedness, and the guaranty explicitly stated that the guarantor remained liable for all renewals or substitutions. While a guaranty may be revoked, a revocation does not alter existing liability for past transactions which have become binding contracts. *Id.* at 458. Thus, notwithstanding whether the filing of Houin's answer amounted to a revocation, Houin would remain liable for all indebtedness occurring prior to June 17, 1980, and for the renewal after the filing of his responsive pleading.

### VII.

■■■ Houin also contends that the execution of the promissory note in 1980 with a different interest rate was without his knowledge or consent and constituted a material change in the original contract. We do not agree. Houin correctly states that any binding change in the principal's contract to which the guarantor or surety does not consent will discharge the surety from liability. *Skrypek*, 469 N.E.2d at 777. However, a guarantor may give such consent prospectively in the guaranty instrument. *Carney v. Central Nat. Bank of Greencastle* (1983), Ind.App., 450 N.E.2d 1034. The guaranty executed by Houin contained the following provisions:

"Each of the Guarantors waives all notice of acceptance of this contract by the Bank; all notice of the extension of credit from time to time given by Bank to said Debtor; and all notice of the amount of the indebtedness of the Debtor to the Bank which may exist from time to time, and agree that if any one of the undersigned desires at any time to ascertain the amount of liability accrued under this guaranty, he will make inquiry from said Bank.

"Forbearance on the part of the Bank to take steps to enforce the payment of any indebtedness held by it against said Debtor, arising from his default in any respect, whatever, or the giving of further time to said Debtor shall in no way release the Guarantors or any of them, but they and each of them shall remain liable hereunder for the prompt payment of all notes signed by said Debtor and made to said Bank and all renewals thereof or substitutions therefor and all other indebtedness which may now exist and/or may hereafter accrue from said Debtor to said Bank."

In *Skrypek*, the court found identical provisions to indicate consent to renew a note at a higher rate of interest. 469 N.E.2d at 778. Since no new money was loaned to the Websters after June of 1980, the execution of the note on August 26, 1980 was only a renewal of the pre-existing and remaining indebtedness, which was prospectively consented to and permitted under the express terms of the guaranty.

Houin further alleges that a material alteration occurred when the Bank failed to take action between the time the note came due and the time the Websters declared bankruptcy. Again, the nature and extent of the guarantor's liability depends on the terms of his contract. *Orange-Co.*, 393 N.E.2d at 195. It was expressly agreed that forbearance by the Bank to enforce payment of any indebtedness would not release the guarantor. By the terms of the guaranty, the Bank was not required to exercise diligence to enforce its rights against the Websters.

Finally, Houin argues that a material alteration occurred when the Bank entered into a settlement and compromise with the Websters and dismissed the first lawsuit. Houin cites *Lutz v. Frick Company* (1962), 242 Ind. 599, 181 N.E.2d 14, for the proposition that a compromise entered into by an individual creditor is an alteration of the original contract which discharges the guarantor, even if the alteration is to the guarantor's benefit. However, *Lutz* involved a compromise entered into by the parties to "settle in full its claim." In this case, the dismissal of the first lawsuit was voluntary and without prejudice. It did not act as a full and final compromise; instead, the parties executed a new note showing only that recent payment had been made. By the express terms of the guaranty, the guarantor remained liable for all renewals and the Bank had the right to forbear in the enforcement of claims. The dismissal of the prior action did not constitute a material alteration in the guarantor's liability.

## VIII.

There is no question that a guarantor may waive his right to notice of his principal's default. *Bowyer v. Clark Equipment Company* (1976), 171 Ind.App. 431, 357 N.E.2d 290. Appellant alleges that the failure of the Bank to give him notice of the Websters' default discharged him from liability. However, by the terms of the guaranty, Houin agreed to waive presentment for payment, protest and notice of protest and of non-performance of any note or notes. The Bank was not required to give Houin notice of default.

## IX.

Finally appellant argues that the doctrine of equitable estoppel applies discharging him from liability, in that he was not informed of the facts and circumstances leading to the prior dismissal. The facts necessary to establish equitable estoppel are:

1) The representation or concealment of material facts;
2) Made with knowledge of the facts;
3) The party to whom it was made must have been ignorant of the matter;
4) It must have been made with the intention that the other parties should act upon it;
5) The other party must have been induced to act upon it.

*Hargis v. United Farm Bureau Mut. Ins. Co.* (1979), 180 Ind.App. 432, 388 N.E.2d 1175. Under the standard of review mentioned above, we cannot state that the evidence leads us to the conclusion that there was an estoppel in this case. The essential elements of ignorance of the matter and detrimental reliance are missing.

Gary Webster testified that he gave Houin updates of his refinancing efforts, and that he informed Houin that he had obtained enough money to get the suit dismissed. Also, the entry of dismissal stated that "all parties are desirous of this matter being dismissed." Furthermore, the Houins did not change their position because of the dismissal. No defenses were lost; the dismissal was without prejudice. If the Houins wished to adjudicate the matter they could have done so. Also, no new funds were thereafter expended. The execution of the new note was merely a renewal of existing indebtedness. We need not determine if other elements are missing.

We affirm.

STATON, P.J., and HOFFMAN, J., concur.