**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James H. FITZGERALD, d/b/a James H. Fitzgerald and Associates and Ranae Fitzgerald, Defendants–Appellants.**

**No. 90–2012.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1990.

Decided Aug. 2, 1991.

Gerald A. Coraz, Asst. U.S. Atty. (argued), Indianapolis, Ind., for plaintiff-appellee.

Richard P. Watson (argued), Watson & Leatherbury, Indianapolis, Ind., for defendants-appellants.

Before WOOD, Jr., CUDAHY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

This appeal concerns the liability of the Fitzgeralds, defendants-appellants in this case, on a loan from the Small Business Administration. The Fitzgeralds rely on numerous legal theories in order to demonstrate that the personal guaranty which they signed should not render them liable for the unpaid balance of the loan. The district court granted summary judgment in favor of the government, and the Fitzgeralds appeal. We reverse and remand.

## I

In 1979, the Small Business Administration (SBA) arranged for a loan with the Monticello Downtown Redevelopment Holding Corporation (Monticello), which would ultimately benefit James H. Fitzgerald d/b/a James H. Fitzgerald & Associates. Prior to the transaction involving the loan agreement, James Fitzgerald and his wife, Ranae Fitzgerald, (the Fitzgeralds) signed a personal guaranty for the SBA in which they promised to repay the principal, interest and "all other sums payable" on the note to be signed by Monticello on February 8, 1980. The guaranty indicated that the note would involve a principal amount of $63,000 and interest at a rate of 7⅜ percent per annum. On February 8, 1980, Monticello signed a promissory note with those terms for the SBA loan. Monticello used the proceeds of the loan to buy and remodel commercial property, which it then leased to the Fitzgeralds for a term of 15 years with the option to purchase. As consideration for the loan, Monticello gave the SBA the promissory note and the guaranty

and also assigned to the SBA as security all of its rights under the lease. The assignment agreement provided that the Fitzgeralds would direct rental payments to the SBA and that the SBA would apply those payments toward the balance owed on the loan. Monticello remained responsible under the assignment for performing all the obligations, agreements and covenants assumed by it as lessor under the lease.

In December 1984, Monticello and the Fitzgeralds agreed to terminate the lease and to release each other from any obligations arising from the lease and option to purchase. The SBA maintains that it never received formal notification of the termination of the lease and never officially approved it. Later that month, Ms. Clara Rhorer, a commercial loan specialist at the SBA, informed the Fitzgeralds at a meeting that they no longer had any obligation to the SBA on the loan guaranty or on any other document. The Fitzgeralds apparently did not hear from the SBA again until 1988. At that time, Monticello deeded the property to the SBA at the SBA's request after Monticello was unable to lease it. The SBA sold the property,[1] and sent a letter to the Fitzgeralds demanding the balance remaining on the loan. The Fitzgeralds offered to pay $11,907.87 immediately, and to pay the rest in monthly installments. No payments were made, and the SBA sued the Fitzgeralds for the amount owed on the loan. The district court granted the government's motion for summary judgment, rejecting the Fitzgeralds' arguments with respect to lack of certainty, failure of grantor consent, notice of condition precedent, modification of underlying transaction, merger, rescission, estoppel and laches.

## II

■ The initial issue raised by the Fitzgeralds is whether state or federal law governs the guaranty of an SBA loan. We recently addressed this issue in *United States v. Stump Home Specialties Manuf. Inc.*, 905 F.2d 1117, 1119 (7th Cir.1990), holding that "as a general rule, state law applies to disputes arising from loan agreements with the Small Business Administration."[2] In *Stump Home* we rejected language in earlier opinions indicating that federal common law applied or that we had a choice in deciding which law to apply. 905 F.2d at 1119. Because *Stump Home* makes it clear that suits involving enforcement of a guaranty to the SBA are controlled by state law, the district court erred in determining that federal law applied. 905 F.2d at 1119. In any event, we do not believe that the choice of law materially affects the result. But applying Indiana law, we turn to the merits of the Fitzgeralds' challenges.

The Fitzgeralds argue that the guaranty agreement itself was invalid and cannot be enforced against them. This contention is based upon four theories: 1) the agreement lacks certainty because it was signed prior to the note; 2) no proper consent was given; 3) the guaranty secured the lease, not the loan; and 4) a subsequent agreement modified the contract and operated to release them from the guaranty. The first two theories relate to the timing of the guaranty and therefore will be considered together.

■ The Fitzgeralds argue that the guaranty is a nullity because it precedes the note upon which the guaranty is based. Accordingly, they argue that the guaranty lacks certainty of terms because, with the exception of the principal amount and the interest rate, the terms of the note were unrevealed at the time the guaranty was signed. They also maintain that the timing of the guaranty renders the guaranty void

---

**1.** On appeal, the Fitzgeralds argue that the record does not reveal a sale of the property by the SBA and therefore does not support the alleged deficiency. Because this challenge was never presented to the district court, it cannot be raised on appeal. In any case, we may proceed in this appeal as if a sale were conducted because it has no effect on our decision. On remand, the district court may consider whether a sale indeed occurred.

**2.** *Stump Home* expressly recognized that a case could arise in which application of state law would interfere unreasonably with the administration of the SBA's programs.

because the Fitzgeralds could not properly consent to the guaranty without being informed of all the terms, conditions and limitations of the note. The district court properly held that these arguments are without merit. Although the guaranty did not include all of the terms of the subsequent note, the essential terms of the principal and interest rate were included. The subsequent note was executed on the date indicated in the guaranty, and the Fitzgeralds do not allege that it contained terms other than those envisioned in the guaranty agreement. In *Houin v. Bremen State Bank*, 495 N.E.2d 753 (Ind.App.1986), the Indiana appellate court upheld a guaranty that secured continuing, future transactions between the bank and the principal debtors. The guaranty in this case is no less definite and is sufficient to bind the Fitzgeralds.

Second, the Fitzgeralds repeatedly assert that they understood the guaranty agreement to be a formality to secure the lease, not to secure a loan. This argument contradicts the wording of the guaranty, which in the very first line declares that the purpose of the guaranty is to "induce the Small Business Administration to make a loan...." Speaking more generally, this contention is devoid of any support in the record.

■ The third argument propounded by the Fitzgeralds is that a March 1980 agreement entered into between Monticello and the SBA modified the underlying transaction without their consent, and therefore operated to release them from liability on the guaranty. In the March 1980 agreement, the SBA accepted a security agreement that included only equipment and inventory and did not encompass accounts receivable, contract rights and general intangible rights. Under Indiana law, "any binding change in the principal's contract to which the guarantor or surety does not consent will discharge the surety from liability." *Houin,* 495 N.E.2d at 759. Indiana also recognizes, however, that a

guarantor may give such consent prospectively and thereby waive the right to be discharged upon a material change in the terms of the obligation. *Houin,* 495 N.E.2d at 759; *Stump Home,* 905 F.2d at 1120. The guaranty executed by the Fitzgeralds provides the lender with full power, in its uncontrolled discretion, to change the terms of the agreement, except those terms stating the interest rate and the principal amount. This waiver is enforceable under Indiana law and precludes the modification defense asserted by the Fitzgeralds. *See Stump Home,* 905 F.2d at 1120, and cases cited therein.[3]

■ In the alternative, assuming the validity of the guaranty, the Fitzgeralds argue that subsequent actions by the SBA and Monticello operated to release them from liability on the guaranty. The Fitzgeralds rely on the same events to support their arguments of merger, rescission, estoppel and laches. In December 1984, Monticello and the Fitzgeralds entered into an agreement releasing the Fitzgeralds from all rights and responsibilities under the lease agreement. Later that month, Rhorer, a commercial loan specialist for the SBA, met with the Fitzgeralds and informed them that they were no longer under any obligation to the SBA. At least three years later, the SBA requested Monticello to deed the property to the SBA. The SBA then sold the property and contacted the Fitzgeralds to recover the balance of the loan.

The Fitzgeralds maintain that, when Monticello deeded the property back to the SBA in 1988 at the SBA's request, the obligation of the mortgage merged in the fee and was extinguished. When the mortgage was extinguished, the Fitzgeralds argue, the guaranty was similarly extinguished. They also assert that the decision to terminate the lease and the SBA's decision to require that Monticello deed the property to it rescinded the contract. Finally, the Fitzgeralds contend that the SBA is equitably estopped from pursuing relief

---

**3.** We need not decide whether the change was a material one, because it is allowed in any case by the waiver.

on the guaranty because of the representations made by Ms. Rhorer, and that any such action is barred by laches.

The district court noted that the central question in determining whether a party has discharged a contractual obligation of another is intent. *See Owens v. State,* 424 N.E.2d 169 (Ind.App.1981). Both the mortgage signed by Monticello and the guaranty given by the Fitzgeralds indicated that the SBA did not waive any rights by accepting the deed to the property and selling the property.[4] As a result, the court held that, as a matter of law, the Fitzgeralds could not show intent to discharge. The district court did not appear to consider, however, actions by the principals which occurred after the documents were signed. Under Indiana law, a contract can be rescinded not only by express agreement but by actions of the parties subsequent to the formation of the contract which indicate that they intend to terminate the various rights and responsibilities under the contract. *Horine v. Greencastle Production Credit Assoc.,* 505 N.E.2d 802 (Ind.App. 1987).

In this case, Monticello agreed to release Fitzgerald from all its obligations under the lease. A number of actions by the SBA indicated that the SBA acquiesced in that release, and the acts tend to support an argument that the SBA intended to release the Fitzgeralds from their obligations under the guaranty agreement. First, SBA loan specialist Rhorer informed the Fitzgeralds that they no longer had any obligation to the SBA under any document. At oral argument, counsel for the SBA acknowledged that Rhorer was a person who would be authorized to make such a statement with respect to the status of a loan. Counsel indicated, however, that Rhorer may not be authorized to modify or cancel a loan obligation. This uncertainty regarding the scope of Rhorer's authority

is unresolved on this record, and indicates that summary judgment is inappropriate at this juncture. Rhorer was an SBA loan specialist in a position to assess the extent of a guarantor's obligation. Moreover, the record does not establish that Rhorer's statement was unauthorized. Finally, the documents in the record do not require that a release be in writing, thus leaving open the possibility that Rhorer's statement reflected the intent of the SBA to release the Fitzgeralds from their obligations.[5]

A second factor relevant to a determination of intent is the SBA's response to the termination of lease payments. After the December 1984 release with Monticello, the Fitzgeralds ceased making any lease payments. Although the payments in the past had been sent directly to the SBA rather than to Monticello, the SBA did not respond with notices of delinquency in payment or warnings of legal action; instead, the SBA's only immediate response to this cessation of payments was to inform the Fitzgeralds through Rhorer that they no longer were under any obligation to the SBA. More than two years later, the SBA requested Monticello to deed the property to the SBA, and later notified the Fitzgeralds of their liability for the deficiency. The delay between the cessation of all payments and the notification to the Fitzgeralds of a continuing obligation casts further doubt upon the intent of the SBA in 1984, and calls into question the SBA's claim that it did not know or approve of the termination of the lease. These considerations at least raise an issue of material fact regarding whether Rhorer could act to bind the SBA and whether it indeed intended to release the Fitzgeralds from any liability on the guaranty.

Even if Ms. Rhorer was not empowered by the SBA with that authority, the Fitzgeralds may be able to succeed on a theory

---

**4.** Those agreements explicitly preserve the right of the SBA to sell the property without discharging the obligations of the guarantor or debtor, and without releasing them from any of their responsibilities.

**5.** This possibility may be an unlikely one, *see Union National Bank of Chicago v. Weaver,* 604

F.2d 543 (7th Cir.1979) (noting that no agent of the government has the authority to waive contractual rights or modify existing contracts to the detriment of the government without adequate legal consideration or compensating benefit flowing to the government), but it nevertheless precludes summary judgment at this time.

of equitable estoppel. In *Portmann v. United States*, 674 F.2d 1155 (7th Cir.1982), we held that equitable estoppel may be asserted against the government if the following factors are met:

> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury.

647 F.2d at 1167. We also noted that affirmative misconduct must be shown on the part of the government employee, but that the Ninth Circuit had defined that term as requiring a showing of "something more than mere negligence." *Portmann*, 674 F.2d at 1167, *quoting TRW, Inc. v. Federal Trade Comm'n*, 647 F.2d 942, 951 (9th Cir.1981). We cannot say as a matter of law that Ms. Rhorer's statement, if unauthorized, could not have risen above the level of mere negligence. Moreover, the content of Rhorer's statement is specifically alleged and has not been denied by the SBA. *See United States v. Lair*, 854 F.2d 233, 238 (7th Cir.1988) (equitable estoppel asserted against SBA, but general allegations insufficient to raise genuine issue of material fact).

All of the other elements of equitable estoppel have been presented in this case. The Fitzgeralds allege that they relied on the statement by Rhorer in their later investment decisions and that interest accrued on the loan during the period of nonpayment following Rhorer's statement. Moreover, the SBA's position regarding the guaranty involves by its very nature information that would be known to the SBA but not necessarily known to the Fitzgeralds. As the district court recognized, on a motion for summary judgment the court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir.1989). Therefore, summary judgment was improper on the theories of equitable estoppel and rescission of the contract.

The decision of the district court is RE-VERSED and the case REMANDED for further proceedings.