978 F.2d 1261
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
SCHIFF, HARDIN & WAITE, an Illinois Partnership including
Professional Corporations and Krieg, Devault,
Alexander & Capehart, an Indiana
Partnership, Plaintiffs-Appellees,
v.
Eugene I. SCHUSTER and Burt R. Williams, Defendants-Appellants.
 No. 92-1218.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 29, 1992.
Decided Oct. 27, 1992.
 
 1
 Before RIPPLE and KANNE, Circuit Judges, and HARRY D. LEINENWEBER, District Court Judge*.
 
 ORDER
 
 2
 In 1985 American Monitor Corporation filed for Chapter 11 bankruptcy and was represented by the appellees, Schiff, Hardin & Waite ("Schiff") and Krieg, DeVault, Alexander & Capehart ("Krieg"). As a condition for their agreeing to the reorganization plan, the law firms insisted that the appellants, who were substantial investors in American Monitor Corporation (now known as AM Diagnostics, Inc.) (AMD), give personal guaranties for a substantial portion of the outstanding legal fees. When the guaranties were called, the appellants failed to pay. They took the position that the personal guaranties constitute economic duress or, alternatively, that the guaranties are unconscionable. The district court disagreed and granted summary judgment to the attorneys. For the reasons that follow, we affirm the district court.
 
 
 3
 * BACKGROUND
 
 A. Facts
 
 4
 AMD filed for Chapter 11 bankruptcy on December 19, 1985. Because of serious capital problems, the reorganization plan had a number of false starts. Capital was provided by several investors, including the two appellants. Williams is the Chief Operating Officer of Rupp and Bowman Company and a member of the Creditors' Committee in the AMD bankruptcy proceeding. Schuster is the President and Chairman of Quest Biotechnology, Inc., a holding company. On August 31, 1987, Quest entered into a management agreement with AMD, and Schuster became Chairman of AMD's Board of Directors.
 
 
 5
 On October 1, 1989, AMD filed its Sixth Amended Plan with the bankruptcy court. Many of AMD's creditors had agreed to accept equity in AMD in full satisfaction, and the attorneys and accountants associated with the debtor had agreed to take 65% of the dollar amount of their accrued claims in cash plus certain stock. The Plan provided that the cash payments to the appellees would take place in two equal installments, and that the second installment, due on March 12, 1991, would be guaranteed personally by Schuster and Williams. Schiff received a note in the principal amount of $97,7690.33, and Krieg received a note in the principal amount of $127,731.91. The guaranties provided that the notes would accrue interest at the prime rate of the Chase Manhattan Bank of New York until paid and that attorneys' fees and costs of collection would be paid by the guarantors in event of default. The Plan was confirmed by the Bankruptcy Court on December 6, 1989.
 
 
 6
 The debtor defaulted on the second installment, and the notes came due but were not paid. Krieg and Schiff filed this suit in which they seek payment from Schuster and Williams.
 
 B. District Court Proceedings
 
 7
 The matter was before the district court on the plaintiffs' summary judgment motion. The facts were essentially undisputed that the guaranties had been made but were not honored after AMD failed to perform under the requirements of the Plan. In their defense the defendants argued that they signed the guaranties only under economic duress and that the guaranties were unconscionable. The defendants maintained that Malcolm Mallette, a partner in Krieg, made repeated "threats" to Schuster and to Mary Lore, vice-president, treasurer, and chief financial officer of Quest. These threats were that, if objections were raised to the requested attorneys' fees, the insistence on a cash settlement, or the requirement of personal guaranties for such outstanding fees, the plaintiffs would block the Plan, would not permit AMD to emerge from Chapter 11 bankruptcy, and would have the proceedings converted into Chapter 7 liquidation.
 
 
 8
 The district court determined that, even if economic duress were a viable defense in Indiana, the facts in this case did not present such a situation. The court noted that the plaintiffs were within their rights to demand payment on guaranties under the provisions of the Code and that they were similarly within their rights to suggest that they would attempt to block Plan confirmation if their terms were not met. The court noted that under the provisions of the Bankruptcy Code, 11 U.S.C. § 503(b)(4), administrative fees, including attorneys' fees, were allowed and that under § 507(a)(1) such fees were given priority. The district court also relied upon § 1129(a)(9)(A), which provides for confirmation of a bankruptcy plan only if "the plan provides that with respect to a claim of a kind specified in section 507(a)(1) ... the holder of such claim will receive [on the effective date of the plan] ... such cash equal to the allowed amount of such claim [unless otherwise agreed]." Schiff, Hardin & Waite v. Schuster and Williams, No. IP-91-469-C, p. 5 (S.D.Ind. Nov. 19, 1991).
 
 
 9
 The district court held, alternatively, that res judicata barred the claim because the plaintiffs properly put their fee claims before the Bankruptcy Court pursuant to 11 U.S.C. § 330, and the defendants had an opportunity to protest either the fees, or the manner in which the plaintiffs sought them, in that forum. The court relied upon Barnett v. Stern, 909 F.2d 973, 979-80 (7th Cir.1990), for the proposition that plan confirmation is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and matters relating to attorneys' fees and guaranties should have been raised in Bankruptcy Court.
 
 
 10
 In addressing the defendants' unconscionability claim, the court ruled that the parties understood the plaintiffs' demand for payment of their fees, were represented by counsel at all times, and otherwise did not exhibit the unwillingness or lack of awareness that characterizes unconscionability claims. See Houin v. Bremen State Bank, 495 N.E.2d 753, 758 (Ind.Ct.App.1986). The court granted the plaintiffs' motion for summary judgment and awarded them the outstanding balance plus interest and costs against Schuster and Williams, jointly and severally.
 
 
 11
 Williams and Schuster now appeal this ruling.
 
 II
 DISCUSSION
 A. Standard of Review
 
 12
 We review the grant of summary judgment de novo. Mason & Dixon Lines, Inc. v. Glover, No. 91-2338, slip op. at 7 (7th Cir., Sept. 22, 1992); Pro-Eco v. Board of Comm'rs of Jay County, Ind., 956 F.2d 635, 637 (7th Cir.1992). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we view the record in a light most favorable to the party opposing the motion and determine whether the movant is entitled to judgment as a matter of law. Because there are no disputed facts, we determine solely whether the district court properly applied the law.
 
 B. Economic Duress and Unconscionability
 1.
 
 13
 The centerpiece of the appellants' argument on appeal is that the comments made by Mallette prior to the confirmation of the Sixth Amended Plan constitute economic duress under Indiana law. We pointed out in Vaughn v. General Foods Corp., 797 F.2d 1403, 1417 (7th Cir.1986), cert. denied, 479 U.S. 1087 (1987), that "Indiana does not recognize economic duress as a defense." While Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 283 (Ind.1983), notes the "modern tendency" of courts to recognize such a defense, neither the Indiana Supreme Court nor the Appellate Court in Day v. Bicknell Minerals, Inc., 480 N.E.2d 567, 570-71 (Ind.Ct.App.1985), may safely be read to establish such a defense. Consequently, while the district court declined to address the existence of the defense in Indiana, we adhere to our previous determination in Vaughn and hold that such a defense is not available.
 
 
 14
 In any event, even if we were to apply the standard for economic duress established by other jurisdictions, we could not conclude that the "threats" described in this record were wrongful.[1] The Bankruptcy Code, 11 U.S.C. § 1112(b), provides as follows:
 
 
 15
 on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title ... for cause, including--
 
 
 16
 ............................................................
 
 
 17
 ....................
 
 
 18
 * * *
 
 
 19
 (2) inability to effectuate a plan;
 
 
 20
 * * *
 
 
 21
 (4) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan ...
 
 
 22
 Consequently, the appellees were within their rights to insist on certain payment arrangements as a precondition to agreeing to the Plan. While the appellees did not have the power to convert the Chapter 11 proceeding without court approval, they certainly could ask the Bankruptcy Court to do so.
 
 2.
 
 23
 Finally, the appellants argue that requiring such personal guaranties is unconscionable. Unconscionability is employed most sparingly by the Indiana courts. The leading case is Weaver v. American Oil Co., 276 N.E.2d 144 (In.1971), which found unenforceable a guaranty contract that exculpated a lessor oil company from liability for its negligence and compelled the lessee (a man with very limited education) to indemnify lessor for any damage incurred by the lessor's negligence. The court found the contract to be unenforceable on public policy grounds because the disparity in bargaining power was so marked: the advantage to the stronger company was clear, and the risk posed to the weaker (and unaware) party was great. Id. at 148. The court in Weaver went on to say that a contract is unconscionable if it is "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." Id. at 146.
 
 
 24
 We do not have such an unequal playing field before us here. Schuster and Williams were seasoned businessmen with access to legal representation. The record will not support the inference that they did not appreciate the significance of the guaranty agreements. Indeed they admit that they willingly agreed to the guaranties because they wanted the reorganization plan to be approved. This is not the sort of heavy-handed manipulation that the Weaver court stepped in to rectify. Consequently, neither Mr. Schuster nor Mr. Williams may assert such defenses.
 
 Conclusion
 
 25
 For the foregoing reasons,[2] we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Harry D. Leinenweber, United States District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 We recently addressed the Illinois doctrine of economic duress in Resolution Trust Corp. v. Ruggiero, No. 91-2095, slip op. (7th Cir. Oct. 7, 1992). In Illinois, the duress must have rendered the individual " 'bereft of the quality of mind essential to the making of a contract.' " Id. slip op. at 6 (quoting Alexander v. Standard Oil Co., 423 N.E.2d 578, 582 (Ill.App.Ct.1981). We also noted in Ruggiero that Illinois courts find no economic duress when defendant's business decisions or economic conditions caused the pressure, and the pressure is neither wrongful nor unlawful. Ruggiero, slip op. at 7
 
 
 [2]
 It is unnecessary for us to reach the district court's alternate holding that the appellants' claims are barred by the doctrine of res judicata